[Civ. No. 9642. Third Dist. Jan. 20, 1960.]

HERMILA CERVANTES et al., Appellants, v. MACO GAS COMPANY (a Corporation), Respondent.

Perkins & Carr for Appellants.

McLaughlin & Russell for Respondent.

SCHOTTKY, J.—Plaintiffs, Hermila Cervantes and Paul Cervantes, husband and wife, commenced an action to recover damages for the alleged wrongful death of their adult son, Alex Cervantes, who died as a result of monoxide poisoning. The jury brought in a verdict in favor of the wife, Hermila, but adverse to the husband, Paul. Defendant, Maco Gas Company, made a motion for a new trial which was granted on the ground that the court had committed error in instructing the jury that any contributory negligence of Paul was not to be imputed to Hermila and in refusing to instruct the jury that any contributory negligence on the part of Paul or Hermila would be imputed

to the other. Plaintiff Paul's motion for a new trial was denied. Plaintiff Hermila has appealed from the order granting a new trial, and plaintiff Paul has appealed from the judgment denying him relief.

The record shows that Alex Cervantes owned real property at Wilton upon which there were three houses. Alex used what is known as the little house for sleeping quarters. Maco Gas Company was asked to install a kitchen stove and check a heater in one of the other houses on the property. After completing this work on November 28, 1956, Maco was asked to run a gas line to the little house to connect up a heater. Mr. Veit, Maco's employee, ran a line from the propane tanks to the little house. He connected the line to the heater. A valve was installed inside the house at the point the line entered the house. There was also a valve at the heater. After the line was connected, he performed a soap test to check for leaks at the connection and adjusted the flame. He then turned off the valve to the heater. As Mr. Veit was completing the job Paul Cervantes came in and, according to Veit, asked how the heater should be vented. Veit testified he told Paul Cervantes how to vent the heater, and that he also told him and Mrs. Reynolds, Alex's sister, that the heater had to be vented before it was used. It was understood Paul would vent the heater. The next day Veit returned and again checked the flame on the heater in the little house.

Alex died of monoxide poisoning on November 30, 1956. He was found by his parents. The room of the little house was filled with black smoke which was pouring from the unvented heater. The walls were covered with soot. The flame on the heater was orange in color and burning high.

#### APPEAL OF HERMILA CERVANTES:

The question which we must determine upon the appeal of the wife, Hermila, is whether a recovery by her of judgment for the wrongful death of an adult child is community property. For, if it is community property, then the contributory negligence of Paul is imputed to Hermila and she is not entitled to recover, for as stated in *Flores* v. *Brown*, 39 Cal.2d 622, at page 630 [248 P.2d 922], it is "necessary to impute the negligence of one spouse to the other to prevent the negligent spouse from profiting by his own wrong." In view of the verdict of the jury in favor of Hermila and against Paul, the jury must have determined that Paul was

negligent and that his negligence contributed as a proximate cause to the death of Alex.

Sections 162 and 163 of the Civil Code provide that all property of either spouse owned by such spouse before marriage, and "that acquired afterwards by gift, bequest, devise, or descent, . . . is . . . separate property." Sections 164 provides that all other property acquired by either spouse after marriage is community property. Section 687 of the Civil Code provides that "Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either." Section 163.5 of the Civil Code, enacted in 1957, provides that "All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person."

Section 377 of the Code of Civil Procedure, so far as pertinent here, provides: "When the death of a person not being a minor, or when the death of a minor person who leaves surviving him either a husband or wife or child or children or father or mother, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, . . ."

 Appellant Hermila contends that the causes of action by parents for the wrongful death of an adult child and any recoveries therefrom are not community property. She argues that a recovery by her as the mother of the decedent would be her separate property by virtue of the provisions of section 377 of the Code of Civil Procedure, contending that the property, namely, the awarded damages, comes to her as an heir of the decedent Alex. We do not agree with this contention.

It was held in *Estate of Riccomi*, 185 Cal. 458 [197 P. 97, 14 A.L.R. 509], in construing section 377, that damages constitute no part of the estate of a decedent and that the proceeding is not one within the probate jurisdiction of the court; that the distribution of damages recovered must be on the basis of the pecuniary loss to the various "heirs" rather than upon their rights under succession statutes. The court said at page 462: ". . . But, as said in the Redfield case, *supra,* 'The recovery is for the injury inflicted upon the plaintiffs personally, and not for injuries inflicted upon her [the deceased] ; and the word "heirs" in the statute is intended to *limit the right of recovery* to a class of persons who, because of their relations to the deceased, are supposed to be injured by

her death.' (Italics are ours.) In other words, the plain design of the statute is to give solely to the members of a certain class the opportunity to recover damages for such pecuniary loss as they had suffered by reason of the death of the decedent, and to recompense, insofar as the law can do so, each of such class who has suffered pecuniary loss.''

While section 377 did give appellants the right to commence an action to recover damages for the death of their adult son, it did not operate to make a recovery by appellant Hermila her separate property because such recovery cannot be held to have been acquired by gift, bequest, devise, or descent, as provided in the code sections hereinbefore quoted. The only exception to making property acquired after marriage separate property was by section 163.5 of the Civil Code, enacted by the Legislature in 1957, and this exception related only to actions for personal injuries. It must be assumed that the Legislature was aware of the decisions of our Supreme Court to the effect that the contributory negligence of one spouse is imputed to the other spouse in cases where the recovery is community property, and yet it limited the exception in section 163.5 to actions for personal injuries. The earnest argument of appellants that appellant Hermila's recovery for the wrongful death of her adult son may state good reasons why the Legislature should amend the law, but it cannot justify this court in holding that the judgment in favor of Hermila was her separate property.

We therefore conclude that the court erred in instructing the jury that the contributory negligence, if any, of Paul was not to be imputed to Hermila, and in refusing to give instructions offered by respondent to the effect that contributory negligence, if any, on the part of either Paul or Hermila would bar recovery by both, and that the court properly granted respondent's motion for a new trial.

APPEAL OF PAUL CERVANTES:

Appellant Paul first contends that his contributory negligence, if any, in failing to complete the job of venting the heater was not a proximate cause of the death of Alex. There is no merit to this contention. ▆ Contributory negligence to bar a plaintiff's recovery must have legally contributed to the injury of which complaint is made, as in the instant case the death of Alex. It need not be a sole cause and is sufficient if it is ''a'' proximate cause concurring or cooperating with the negligent act of defendant. (*Scott* v. *Nevis*, 120 Cal.App. 2d 619 [261 P.2d 797].) ▆ It is fairly inferable from the

evidence that the failure to vent the heater permitted the gas to stay in the room and was a cause of the death of Alex. If, as was contended, the heater was not properly adjusted by Veit, and as a result improper combustion occurred, it cannot be said that this was the sole proximate cause of the death, since the purpose of venting a heater is to take care of the very contingency of carbon monoxide resulting from an improperly adjusted flame. It was understood Paul would vent the heater. He was told it must be vented. The jury could properly infer that Paul's failure to vent the heater before it was used was negligence and contributed to the death of Alex.

Appellant Paul next contends that it was error for the court to refuse to admit into evidence portions of Sacramento County Ordinance 518, requiring a permit prior to the installation of any gas appliance and requiring an inspection after installation and prior to use. The ordinance was offered to show negligence on the part of respondent. It would seem that the requirement of an inspection is to prevent the use of any improperly installed appliance and that the ordinance set up a standard of conduct requiring gas heaters to be vented. We believe that the court should have admitted the ordinance into evidence, but in view of the fact that the jury by its verdict impliedly found respondent Maco guilty of negligence, we do not believe that appellants were prejudiced by its exclusion.

Appellant Paul also contends that the trial court erred in not permitting into evidence tests of the gas pressure entering the appliance. The purpose was to show that the flame was too high. The court refused to admit the evidence because when the test had been made the condition of the furnace was slightly different than at the time of the accident. It also could not be determined whether or not the pressure gauge had been changed since the time of the accident. In view of the difference in the condition of the furnace and the fact that the adjustment on the pressure gauge may have been changed, the court did not abuse its discretion in not permitting evidence of the tests.

Appellant Paul also contends that the trial court erred in not admitting evidence of his physical condition.

The measure of damages in an action for wrongful death under the provisions of section 377 of the Code of Civil Procedure is what the heirs received at the time of the death of the decedent and what the heirs would have received had the decedent lived. (*Simoneau* v. *Pacific Electric Ry. Co.*, 166

Cal. 264 [136 P. 544, 49 L.R.A. N.S. 737].) The physical condition of Paul at the time of Alex's death was relevant, but in the instant case the offer of proof was the earning capacity at the time of the trial. The pecuniary loss is to be determined by conditions existing at the time of the death of the deceased. The liability of the defendant could not in any manner be affected by matters occurring to the family subsequent thereto. In *Johnson* v. *Western Air Express Corp.*, 45 Cal.App.2d 614 [114 P.2d 688], the court said at page 622: "Undoubtedly it is the established law in California that in an action instituted by the heirs-at-law under the provisions of section 377 of the Code of Civil Procedure, evidence of the financial condition as to either poverty or affluence of such heirs-at-law is clearly immaterial and inadmissible. The measure of damages in such case is what the heirs were receiving at the time of the death of the deceased and what such heirs would have received had decedent lived. It is the destruction of their expectations in this regard that the law deals with and for which it furnishes compensation. . . ."

Furthermore, in view of the fact that the jury by its verdict impliedly found upon sufficient evidence that appellant Paul was guilty of contributory negligence, he could not have been prejudiced by the exclusion of evidence as to his physical condition.

We therefore conclude that the court did not err in denying appellant Paul's motion for a new trial.

The order granting defendant's motion for a new trial is affirmed, and the judgment denying plaintiff Paul Cervantes relief is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied February 17, 1960, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1960. Peters, J., was of the opinion that the petition should be granted.