[Civ. No. 30820. First Dist., Div. Two. Dec. 17, 1973.]

LOUISE D. RILEY, as Administratrix, etc.,
Plaintiff and Respondent, v.
CALIFORNIA ERECTORS, INC., et al., Defendants and Appellants.

## COUNSEL

Bledsoe, Smith, Cathcart, Johnson & Rogers, Kenneth E. Nussbaum and James J. Marchiano for Defendants and Appellants.

Garry, Dreyfus, McTernan & Brotsky and Allan Brotsky for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendants appeal from judgment of the San Francisco Superior Court in favor of plaintiff in the sum of $32,500.

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

QUESTION PRESENTED:

In an action for the wrongful death of a son, evidence of the subsequent marriage of the mother, a widow, is not admissible.

RECORD:

■ Plaintiff filed a complaint against defendants for damages for the wrongful death of her son. The matter was submitted to the trial judge on the following agreed statement of facts, issue of law and stipulation for judgment: "Larry D. Moody, while employed as a carpenter by Cahill Construction Company, the general contractor, on a construction project in San Francisco, California, was killed on July 8, 1966, his twenty-first birthday, as a proximate result of the negligence of defendant California Erectors, Inc. At his death, Moody was survived by his mother Louise D. Riley, with whom he was living, and his father, Howard D. Moody. The decedent's father and mother had been divorced in 1957; she had subsequently married Frank A. Riley in 1958 and divorced Riley in 1961, and was single at the time of decedent's death. At the time of decendent's death, his mother contemplated marrying Charles Dresselhaus at some undetermined future date.

"The parties have agreed that in the within action for the wrongful death of Larry D. Moody, judgment shall be entered in favor of plaintiff Louise D. Riley, as administratrix on behalf of both heirs, and against defendant California Erectors, Inc., in one of the two amounts hereinafter set forth, depending on the admissibility into evidence of the further facts, not in dispute as facts, that Louise D. Riley married Charles Dresselhaus 3 months after her son's death, and that Charles Dresselhaus earned in excess of $15,000.00 per year from the time of the marriage to the present.

"Plaintiff contends the evidence of Mrs. Riley's marriage, and of her new husband's earnings, is inadmissible, and defendant contends the evidence is admissible.

"If such evidence is ruled admissible by the trial court it shall be deemed to be in evidence and judgment shall be entered for plaintiff and against defendant in the sum of $19,000.00. If such evidence is ruled inadmissible by the trial court, it shall be deemed a rejected offer of proof and judgment shall be entered for plaintiff and against defendant in the sum of $32,500.00."

The trial judge found that evidence of Mrs. Riley's marriage was inadmissible and awarded plaintiff $32,500. Timely notice of appeal was filed.

EVIDENCE INADMISSIBLE.

The exact issue of whether evidence of the subsequent marriage of the mother of a deceased son is admissible in an action for the wrongful death of her son has not been determined in California. However, as will hereinafter appear, there are analogous situations which have been passed on.

DISCUSSION:

■ A parent who sues for the wrongful death of his or her child may recover damages for the loss of that child's comfort and society, and subsequent protection which the child may afford to the parent, provided these elements are considered in reasonable relation to pecuniary loss (*Fields* v. *Riley* (1969) 1 Cal.App.3d 308, 313 [81 Cal.Rptr. 671]). ■ Where a wife sues for the wrongful death of her spouse, the chief element to be considered in the award of damages is the present value of the earnings he would have contributed to the family during the period of his life expectancy (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 415, p. 1617).

As early as 1915, the California Supreme Court held that in a wrongful death action brought by the children for the death of their mother, evidence of the value of the property they had received from their mother's estate was inadmissible (*McLaughlin* v. *United Railroads* (1915) 169 Cal. 494 [147 P. 149]). ■ The court in *McLaughlin* rejected the English rule that allows evidence of events occurring after the death to be considered in mitigation of damages and followed the American rule that measures the damages by the situation existing at the time of the act causing death and not by events occurring after the act (*id.* at pp. 496-498; see also *Cherrigan* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 643, 652 [69 Cal.Rptr. 42]).

In *Wood* v. *Alves Service Transportation, Inc.* (1961) 191 Cal.App.2d 723 [13 Cal.Rptr. 114], the court held that it was error for defense counsel in a wrongful death action brought by the wife of the deceased to comment that there was a strong possibility that she would remarry. The court states "the general rule appears to be that the pecuniary loss to the beneficiary is to be based upon conditions as they existed at the time of the death" (*id.* at p. 728). The probability of a widow's remarriage is not a proper basis for mitigation of her damages, for it is wholly a matter of speculation whether this would better her condition. (*Id.* at pp. 728-729.) In *Benwell* v. *Dean* (1967) 249 Cal.App.2d 345, 356 [57 Cal.Rptr. 394], the court held that it was proper to exclude evidence of a widow's remarriage on the reasoning that a defendant should not be allowed to profit by a subsequent

marriage, just as a defendant cannot profit by money coming from a collateral source. The reason for the American rule is expressed in another way in *Cervantes* v. *Maco Gas Co.* (1960) 177 Cal.App.2d 246 [2 Cal. Rptr. 75]. *Cervantes* states that pecuniary loss is to be determined by the conditions existing at the time of death of the deceased because the heirs are being compensated for the destruction of their expectations of what they would have received from the deceased had he lived. (*Id.* at p. 252.)

Defendants attempt to argue that a distinction should be drawn between the remarriage of a spouse and a subsequent marriage of a parent, contending that in the former situation the remarriage could not have occurred but for the tortious act of the defendant and admitting evidence of the remarriage would allow the defendant to reap the benefits of his own wrongful act. Defendants further contend that the remarriage of a parent, however, is an after-occurring event that is essentially unrelated to the tortious act of the defendant and evidence of it offered in mitigation of damages does not involve the possibility of the defendant benefiting by his own wrong.

Defendants' argument is without merit for several reasons. In *Benwell* v. *Dean, supra,* 249 Cal.App.2d 345, when the court states that a defendant should not be allowed to profit by a possible remarriage of the plaintiff, it does not state the reason for this as being that the marriage would not have occurred but for the act of the defendant. In fact, *Benwell* states that the defendant should not be allowed to benefit from monies the plaintiff receives from any collateral source. (*Id.* at p. 356.) This would indicate that the court is not allowing a defendant to benefit by any windfalls that may come to the plaintiff even if they would have occurred had the defendant not caused the death of the deceased. This conclusion seems inescapable when one looks to the reasons advanced for the American rule in *Wood* and *Cervantes*. Just as in *Wood* it is a matter of speculation in the instant case if Mrs. Riley's marriage would better her condition. Probably most important of all, under the reasoning used in *Cervantes,* Mrs. Riley is being compensated for the destruction of her expectation of the society and comfort, and subsequent protection which her child might have given her had he lived.

Judgment affirmed.

Taylor, P. J., and Rouse, J., concurred.