[Civ. No. 46705. Second Dist., Div. Five. Aug. 12, 1976.]

DESSIREE MORRIS, a Minor, etc., et al., Plaintiffs and Appellants, v. McCAULEY'S QUALITY TRANSMISSION SERVICE, Defendant and Appellant.

COUNSEL

Scarlett & Roberson and Robert L. Roberson, Jr., for Plaintiffs and Appellants.

Gilliland, Koelsche, Roberson & Moser, James L. Moser, Ellis J. Horvitz and Marjorie G. Romans for Defendant and Appellant.

OPINION

ASHBY, J.—This action was brought by Dessiree Morris, a minor, by her guardian ad litem, Lois Morris, for personal injuries, and by Lois Morris, individually, for medical expenses incurred on behalf of Dessiree. The jury returned a verdict in favor of Lois (hereinafter Mrs. Morris) for the medical expenses in the amount of $600, but also a verdict in favor of defendant against the minor Dessiree. The trial court granted a new trial to Dessiree on the ground that the verdicts were

inconsistent. The trial court did not grant a new trial as to the judgment in favor of Mrs. Morris, because defendant did not move for a new trial. Here, defendant appeals both from the judgment for Mrs. Morris and from the order granting a new trial to Dessiree. Dessiree appeals from that portion of the order granting new trial which fails to limit the new trial to the issue of damages, and also from an order granting certain costs to defendant.

The circumstances of the accident are relatively undisputed, but there is conflicting evidence as to the extent of Dessiree's injuries, and whether her subsequent medical problems were attributable to the accident. On December 10, 1971, Mrs. Morris took her 1962 Cadillac to defendant McCauley's Quality Transmission Service, from whom she had recently purchased the car, for repairs. Dessiree, who was then four years old, was in the right front passenger seat. Mrs. Morris got out and explained the engine trouble to defendant's service manager, Jackie Smith. He suddenly got into the car and drove it into the street to test it. He knew that Dessiree was still in the car and that she was leaning against the right door with her arm on the arm rest, but he took no special precautions to lock the door or otherwise assure her safety. He drove two blocks, and, after stopping and waiting for cross traffic, made a U-turn. During the U-turn, the passenger door came open and Dessiree fell out. Smith immediately stopped, pulled Dessiree back into the car, and returned to the station. According to Smith, only Dessiree's right leg went down when she fell out, and she did not hit her head. Upon returning to the station, he saw only an abrasion and bleeding on Dessiree's right knee.

According to Mrs. Morris, Dessiree, who was crying when she returned to the station, was bleeding, bruised and scratched on her forehead, the top of her head, her knees and hands. She had a bruise on the right-hand side of her forehead.

Mrs. Morris wiped Dessiree's injuries with wet paper towels while Smith repaired the car, which took about an hour. During this time, Dessiree was crying and dozing. Smith asked Mrs. Morris if she wanted to take Dessiree to the doctor, and she said no, that Dessiree was "more scared than hurt."

Later that day, Mrs. Morris took Dessiree to Dr. Charles Bosley, an orthopedic surgeon. Mrs. Morris told him that Dessiree had fallen from a moving car, had not lost consciousness, but had sustained injuries to her

head and neck, and multiple lacerations and abrasions. He examined Dessiree and took X-rays of her skull. He found a bruise (ecchymosis) on the right side of her head, and an abrasion on her right thigh.[1] His diagnosis was cerebral concussion, and he advised Mrs. Morris to watch for symptoms of excessive sleeping, difficult arousing, projectile vomiting, or continuous head pain, and to see him immediately if these developed.

Approximately four and a half months later, on April 28, 1972, Mrs. Morris took Dessiree back to Dr. Bosley, after Dessiree started waking up with headaches and complaining of frequent headaches. Dr. Bosley referred Dessiree to Dr. William Cooper, a neurologist. Dr. Cooper received Dessiree's history from Mrs. Morris, including complaints of weakness in the legs and intermittent headaches approximately once per week since the accident, and, during the two to three weeks prior to the examination, daily headaches accompanied by vomiting and questionable dizziness. He found a scar and bruise on the right front of her head. He took an electroencephalogram (EEG) which was abnormal and showed evidence of a discharging lesion corresponding to the site of the injury. The EEG was also consistent with possible convulsive seizures, and Dr. Cooper advised Mrs. Morris to watch Dessiree closely for possible convulsions. He concluded that Dessiree had suffered a concussion, and he gave her medication for the headaches.

Mrs. Morris testified that Dessiree had developed the following symptoms between the accident and the time of trial, which was January 1975. She wakes up nights and mornings with a headache, which she describes as something jumping up in her head; the headaches vary in frequency from one per month to three per week; her legs sometimes collapse from underneath her, and she drops things a lot; she sometimes stares blankly and does not respond when spoken to; she does not talk much, and sometimes complains that it bothers her when other people talk; sometimes she is very irritable and naughty, and intentionally knocks things off a shelf.

Dr. Cooper examined Dessiree again in November 1974 and found her EEG still abnormal. In his opinion the abnormal EEG is related to the injury suffered in the accident. The injury to the brain is permanent,

---

[1] A typewritten report prepared by him eight months later stated: "Head—negative for contusions, abrasions or lacerations." Dr. Bosley testified this was an error or oversight on his part, that his notes taken at the time of the examination indicated a bruise on the head and that he had more confidence in his handwritten notes.

and no surgery would cure it. The problem with Dessiree's legs giving way may be due to a convulsive seizure which has not yet had complete expression. Dessiree may suffer convulsive seizures or epilepsy in the future, particularly with the onset of puberty. She will require medication for headaches the rest of her life and may require additional medication if other symptoms, such as convulsions, develop. Dessiree's changes in temperament could be due to a brain disturbance. In Dr. Cooper's opinion, Dessiree's problems are related to the head injury she received in the accident.

Dr. Bosley's total bill was $260, and Dr. Cooper's total bill was $310.

Dr. Nicholas Bercel examined Dessiree on behalf of the defense on November 23, 1973. He is "board certified" in neurology, psychiatry, and electroencephalography. He found a bump in the middle of Dessiree's forehead which was not overly sensitive, and two small well healed scars.[2] He took an EEG which was abnormal, in that it showed a right temporal spike dysrhythmia. He took a history from Mrs. Morris and also reviewed Dr. Cooper's file. He disagreed with Dr. Cooper's conclusion that Dessiree had suffered a concussion. This is because Dessiree did not lose consciousness, and in his opinion there can be no cerebral concussion without a loss of consciousness.[3] In order to produce a right temporal spike, there must be a substantial brain injury, which is not common with mere concussions but with skull fractures. The most common cause of a spike is a birth injury. In Dr. Bercel's opinion, Dessiree's headaches could be due to the contusion on her scalp, which irritates the sensory nerves under the scalp. Her abnormal EEG was not necessarily correlated with her headaches. There was only a 10 percent chance that she would develop convulsive seizures, because she had gone two years without them. Children may complain or be mischievous or inattentive for many reasons not involving injury.

Dr. Bercel also based his testimony on records from Childrens Hospital which indicated that on July 14, 1971, five months before the accident, Dessiree underwent surgery to correct a "lazy eye." Eye surgery can cause headaches. There is a notation in the hospital file, dated October 12, 1971 (which was three months after the eye surgery but two

---

[2]Dr. Bercel showed the lump on Dessiree's head to the jury in the court room.

[3]Dr. Cooper testified that a concussion can occur without loss of consciousness or fracture of the skull, because the brain moves inside the skull and can be injured by striking the skull.

months before the accident), as follows: "Four-plus years old. Woke up vomiting. Complained of stomach and frontal headache. Headaches since eye surgery of July '71. And today she had a running nose. And the last few days she was lethargic."

Mrs. Morris testified that she did not recall Dessiree's having headaches after the eye surgery. She had gone back to the hospital because of her ear. Dr. Cooper testified that he was aware of the eye surgery, that Mrs. Morris had told him Dessiree was free of headaches by the time of the accident, and that the hospital record indicated Dessiree was treated for infection of the right middle ear.

## INCONSISTENCY OF VERDICTS

■ We agree with the trial court that the two verdicts are inconsistent. Mrs. Morris' cause of action was derivative of Dessiree's. (See *Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368, 383 [24 Cal.Rptr. 209, 374 P.2d 185]; *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 161 [108 P.2d 989].) The verdict in favor of Mrs. Morris for the approximate amount of medical expenses incurred on behalf of Dessiree necessarily implies that defendant was negligent, that Mrs. Morris was not contributorily negligent, and that the medical expenses incurred were proximately caused and reasonably required by defendant's negligence. The verdict in favor of defendant against Dessiree necessarily implies that defendant was not negligent, or that Dessiree failed to establish any substantial damages proximately caused by defendant's negligence, or both.[4] Such inconsistency of result based upon the same set of facts cannot be permitted to stand. The verdicts were "against the law" and therefore constituted proper grounds for a new trial. (Code of Civ. Proc., § 657, subd. 6; *Campbell* v. *Zokelt,* 272 Cal.App.2d 315, 318-320 [77 Cal.Rptr. 561]; *Remy* v. *Exley Produce Express, Inc.,* 148 Cal.App.2d 550, 553-554 [307 P.2d 65].)

Defendant contends that the verdicts are consistent on the following theory (we quote from the appellant's opening brief): ". . . Appellant contends that the jury could have found that there was negligence on the part of Defendant and still brought in a verdict in favor of Defendant against Dessiree Morris on the grounds that she suffered no compensable injury. [*Nelson* v. *Black,* 43 Cal.2d 612, 613-614 (275 P.2d 473).] This is ·

---

[4] Being four years old, Dessiree was of course incapable of contributory negligence. (*Christian* v. *Goodwin,* 188 Cal.App.2d 650, 652-655 [10 Cal.Rptr. 507].)

not inconsistent with the verdict in favor of the mother, Lois Morris, because the jury could have found that she did suffer a compensable injury proximately caused by Defendant's negligence in that she was forced to pay medical bills for examination and diagnosis." (Fn. omitted.)

We find no merit to this contention. If, as defendant contends, the jury found that the many problems that Dessiree developed over the two years following the accident were not attributable to the accident, then the jury was not justified in charging defendant for the medical expenses incurred because of those symptoms. (See *Dimmick* v. *Alvarez,* 196 Cal.App.2d 211, 215-216 [16 Cal.Rptr. 308]; *Gimbel* v. *Laramie,* 181 Cal.App.2d 77, 81 [5 Cal.Rptr. 88]; *Calhoun* v. *Hildebrandt,* 230 Cal.App.2d 70, 73 [40 Cal.Rptr. 690].) Defendant cites no authority for its argument that it would be permissible for the jury to award Mrs. Morris the medical costs even though the jury found that Dessiree's problems were not attributable to the accident.[5] Even assuming that where a defendant's negligence causes an accident a plaintiff might be entitled to recover reasonable medical expenses for an examination to determine if she was injured by the accident, even though the examination proved negative, this is not such a case, nor was the jury specifically instructed along those lines. At least a portion of the expenses incurred here were for treatment rather than mere diagnosis. Although defendant's theory might conceivably apply to the first visit to Dr. Bosley on the day of the accident, the subsequent medical expenses were incurred much later in time, and these expenses cannot reasonably be attributed to defendant unless Dessiree's problems were attributable to defendant's negligence. If, on the other hand, Dessiree's frequent headaches, vomiting, wobbly legs, clumsiness and irritability are attributable to the accident, the jury erred in failing to award her any general damages. (See *Haskins* v. *Holmes,* 252 Cal.App.2d 580, 583-587 [60 Cal.Rptr. 659]; *Buniger* v. *Buniger,* 249 Cal.App.2d 50, 54 [57 Cal.Rptr. 1].)

Defendant next contends that plaintiffs waived the right to complain about the inconsistency of the verdicts by opposing giving the case back to the jury before the jury's discharge so that corrective action could have been taken. When the verdicts were brought in, the trial court took counsel into chambers and suggested that the verdicts were inconsistent. Plaintiffs' counsel agreed that they were inconsistent;

---

[5]The one case cited by defendant, *Randles* v. *Lowry,* 4 Cal.App.3d 68, 73 [84 Cal.Rptr. 321], is not in point. It involved a child who suffered only two easily treated lacerations and who had no subsequent problems or additional medical expenses.

defendant's counsel argued that they were consistent, on the theory indicated above. The court asked counsel's opinion as to whether "we do anything now about it or do I let it go and then we look at it, if there is a motion for new trial?" Both counsel indicated that they did not think the court could give the matter back to the jury. Plaintiffs' counsel said he would agree to sending it back to the jury only if the sole issue to be resubmitted was the amount of damages for Dessiree. Defense counsel and the court disagreed, stating that both verdicts would have to be resubmitted. Ultimately the position of counsel for plaintiffs was that the matter should not be resubmitted unless on his proposed conditions; defense counsel's position was that the matter should not be resubmitted because the verdicts were consistent. The court then discharged the jury.

Subsequently Dessiree moved for a new trial based upon inconsistency of the verdicts. Defendant did not move for a new trial on the judgment in favor of Mrs. Morris.

In arguing that plaintiffs waived the right to bring the motion for new trial on behalf of Dessiree, defendant relies on Code of Civil Procedure section 619, which gives the court power to require the jury to deliberate further when an informal or an insufficient verdict has been returned, and upon *Brown* v. *Regan,* 10 Cal.2d 519, 523-524 [75 P.2d 1063], where the court said that a party who at the time of rendition of such a verdict fails to request its correction waives such error.

The waiver rule in *Brown* is not automatic and there are many exceptions to it. (*Woodcock* v. *Fontana Scaffolding & Equip. Co.,* 69 Cal.2d 452, 456-457 fn. 2 [72 Cal.Rptr. 217, 445 P.2d 881]; *Mixon* v. *Riverview Hospital,* 254 Cal.App.2d 364, 376-377 [62 Cal.Rptr. 379].) In both *Campbell* v. *Zokelt, supra,* 272 Cal.App.2d 315, 320, and *Remy* v. *Exley Produce Express, Inc., supra,* 148 Cal.App.2d 550, 554-555, cases where verdicts were held fatally inconsistent, it was stated that a defect of that type is not waived by failure to call it to the attention of the trial court prior to discharging the jury. Although in this case plaintiffs' counsel actively opposed sending the case back, rather than merely failing to draw attention to the problem, defense counsel was also opposed to resubmitting the matter. (See *Mixon* v. *Riverview Hospital, supra.*) We hold that the issue was not waived.

We now consider the effect of our holding that the verdicts are inconsistent. Dessiree contends that the trial court erred in failing to limit

the order granting her a new trial to the issues of damages only. Dessiree's argument is that the verdict in favor of Mrs. Morris necessarily established that defendant was negligent, and that upon the retrial of Dessiree's case, defendant would be collaterally estopped to deny negligence. This contention is without merit. The doctrine of res judicata applies only to final judgments, that is, to judgments which are free from attack on appeal. (*Myers* v. *Washington,* 211 Cal.App.2d 767, 772 [27 Cal.Rptr. 778]; see *Wood* v. *Herson,* 39 Cal.App.3d 737, 747 [114 Cal.Rptr. 365].) The judgment in favor of Mrs. Morris is not final because it is on appeal in this very case. Defendant has appealed from the judgment in favor of Mrs. Morris as well as from the order granting a new trial to Dessiree.

■ Furthermore, we agree with defendant that the inconsistency of the verdicts compels a reversal of the judgment in favor of Mrs. Morris. The inconsistency rendered both verdicts equally against the law, and the affirmance of the order granting a new trial to Dessiree requires reversal of the judgment for Mrs. Morris. (See *Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773, 780 [135 P.2d 569]; *Tolley* v. *Engert,* 71 Cal.App. 439, 440-442 [235 P. 651].)

Although defendant did not move the trial court for a new trial as to Mrs. Morris, and therefore the court felt powerless to grant a new trial on its own motion, defendant has preserved the issue by appealing from the judgment in favor of Mrs. Morris. Since we have both plaintiffs before us on this appeal, we cannot allow the inconsistent verdicts to stand or permit a retrial as to Dessiree only, which could possibly result in another inconsistent verdict. (*Ferroni* v. *Pacific Finance Corp., supra; Tolley* v. *Engert, supra;* cf. *Remy* v. *Exley Produce Express, Inc., supra,* at pp. 555-557, where the other judgment had become final and had not been appealed.)

## Costs

On the judgment against Dessiree, the trial court allowed defendant costs of $745, including a charge of $115 for the deposition of Mrs. Morris. Dessiree contends that the trial court abused its discretion under Code of Civil Procedure section 1032 in awarding the entire cost of the deposition to defendant, since Mrs. Morris prevailed on her cause of action. Because the trial court subsequently granted Dessiree a new trial, and we herein reverse the judgment in favor of Mrs. Morris, we find it unnecessary to discuss this issue.

The order granting a new trial to Dessiree Morris is affirmed. The judgment in favor of Lois Morris, individually, is reversed. The appeal from the order on plaintiffs' motion to tax costs is dismissed. The parties to bear their own costs on appeal.

Kaus, P. J., and Hastings, J., concurred.