[Civ. No. 17586. Fourth Dist., Div. Two. Aug. 17, 1979.]

FRANK CAVALLARO et al., Plaintiffs and Appellants, v.
MICHELIN TIRE CORPORATION, Defendant and Appellant.

**COUNSEL**

Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball, Clyde C. Beery and Joseph D. Mullender, Jr., for Defendant and Appellant.

Tucker & Coddington, Clinton C. Coddington, William G. Tucker, Michael J. Rand, Dickerson, Miles & Pico and James F. Pico for Plaintiffs and Appellants.

**OPINION**

**KAUFMAN, J.**—Frank and Virginia Cavallaro, husband and wife, and their two children, Lisa, eleven years old, and Eric, eight years old, were

residents of Las Vegas, Nevada. On the weekend of September 19, 1970, Mrs. Cavallaro decided to visit her parents in Irvine, California, while her husband, a physician, was on call at the hospital. On September 21, at about 4 a.m. as Mrs. Cavallaro and the children were returning to Las Vegas in the family's Chrysler stationwagon at a probable speed of about 90 miles per hour, the left rear tire of the car disintegrated and the car skidded off the road, rolled over and came to rest some 600 feet distant from the point it began to skid. Mrs. Cavallaro and Lisa were killed, and Eric sustained personal injuries.

The tires on the Chrysler at the time of the accident were four Michelin Radial X steelbelted tires manufactured in 1968 by a French corporation, La Manufacture Francaise Des Pneumatiques Michelin. Mr. Cavallaro had purchased the tires in the summer of 1969 from Radial Tire Company of Sacramento (Radial), a retailer. Radial had purchased the tires from Michelin Tire Corporation (Michelin) the wholesale distributor. When Mr. Cavallaro purchased the tires he received Michelin's standard express 40,000 mile warranty against manufacturing defects. Radial gave no express warranty. At the time of the accident the tires had been driven approximately 23,500 miles.

Frank and Eric Cavallaro commenced this action for damages for the wrongful deaths of Virginia and Lisa Cavallaro, damages for Eric's personal injuries and recovery of the medical expenses incurred for treatment of Eric's injuries. Named as defendants were Chrysler Corporation, which manufactured the automobile, Michelin and Radial. The manufacturer of the tire was not sued. Plaintiffs' theory against Chrysler Corporation was that there was a defect in the doorpost of the driver's side of the automobile which, although it did not cause the accident, gave way and caused the death of Mrs. Cavallaro. Although plaintiffs originally asserted a cause of action against Michelin and Radial for negligence, they abandoned that theory at an early stage of trial and proceeded against defendants Michelin and Radial on theories of strict liability in tort, express warranty and implied warranty, on the premise that the disintegration of the tire, which was built to hold up at speeds up to 115 miles per hour, was caused by a manufacturing defect—a lack of proper bonding. It was Michelin's theory that a hard metal object had penetrated the tire a minimum of 15 minutes before the accident, causing it to run underinflated and eventually disintegrate.

On verdict forms hereafter more fully discussed, the jury returned verdicts against Michelin in the following amounts: $3,550 for Eric's

medical expenses; $20,000 for Eric's personal injuries; $100,000 for the death of Lisa Cavallaro and $522,000 for the death of Virginia Cavallaro. Under instructions on comparative fault given over the objection of plaintiffs, the jury made a special finding that Mrs. Cavallaro was contributorily negligent and assessed 27 percent of the fault to her negligence and 73 percent of the fault to Michelin. The court reduced the gross figure of $522,000 assessed as damages for the wrongful death of Mrs. Cavallaro to $381,060.

The effect of the jury verdicts with respect to Radial is a disputed issue on appeal. Suffice it to say at this point that no verdict was returned determining that Radial had any liability. Although the verdicts appear to be in the same form as to Chrysler as they were with respect to Radial, the parties are agreed that the verdicts exonerated Chrysler, and Chrysler is not involved in this appeal.

Its motion for new trial having been denied, Michelin appeals from the judgment contending: (1) that the jury's verdicts constitute a verdict in favor of Radial which is fatally inconsistent with the verdict against Michelin inasmuch as the liability of these two defendants must be identical since both were suppliers of the automobile tires; (2) that there was no substantial evidence of a manufacturing defect in the tire; (3) that Michelin was prejudiced by misconduct on the part of plaintiff's trial attorney; (4) that the court erred in excluding evidence of Frank Cavallaro's remarriage; and (5) that Mrs. Cavallaro's 27 percent contributory fault should have reduced not only the recovery for her wrongful death but also the recoveries for the wrongful death of Lisa, Eric's personal injuries and Eric's medical expenses.

Plaintiffs cross-appeal from the judgment contending that the principle of comparative fault should not have been employed by the court to reduce the liability of Michelin based not on negligence, but on strict liability or breach of warranty and that, in any event, plaintiffs' cause of action for the wrongful death of Mrs. Cavallaro was an "independent" claim not subject to reduction because of the contributory fault of the decedent.

We have concluded that the jury verdicts were fatally inconsistent as to Michelin and Radial and that the judgment must therefore be reversed. The other questions raised both on the appeal and the cross-appeal are thereby rendered moot and need not be resolved except for two: (1) the admissibility of evidence of Frank Cavallaro's remarriage; (2) whether

damages, if any, for the wrongful death of Virginia Cavallaro are subject to reduction on account of contributory negligence on her part. These questions will in all probability recur on retrial, and we are therefore required to address them. (Code Civ. Proc., § 43.)

*Inconsistent Verdicts*

Michelin renews on appeal its contentions presented to the trial court as one basis for its motion for new trial that the verdicts of the jury exonerating Radial and the verdicts imposing liability on Michelin constitute inconsistent verdicts; that inconsistent verdicts are "against law"; that, therefore, the trial court was required to grant the motion for new trial (Code Civ. Proc., § 657, subd. 6); and that its failure to do so constituted reversible error. (E.g., *Morris* v. *McCauley's Quality Transmission ·Service,* 60 Cal.App.3d 964, 970-971 [132 Cal.Rptr. 37]; *Campbell* v. *Zokelt,* 272 Cal.App.2d 315, 318-320 [77 Cal.Rptr. 561]; *Remy* v. *Exley Produce Express, Inc.,* 148 Cal.App.2d 550, 554 [307 P.2d 65]; *Winkler* v. *So. Cal. etc. Medical Group,* 141 Cal.App.2d 738, 746-748 [297 P.2d 728]; *Tolley* v. *Engert,* 71 Cal.App. 439, 440-441 [235 P. 651]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 274, p. 3081.)

Michelin's argument is that the bases of liability of a wholesale distributor and retail seller of a defectively manufactured product are identical and are based upon the same two facts: (1) a manufacturing defect in the product which (2) was a proximate cause of the plaintiffs' injury (*Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228, 252-253 [71 Cal.Rptr. 306]; see *Hauter* v. *Zogarts,* 14 Cal.3d 104, 120-121 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 262-263 [37 Cal.Rptr. 896, 391 P.2d 168]); that the jury's verdicts exonerating Radial were necessarily based upon a determination that the tire in question was not defectively manufactured, whereas the verdicts against Michelin were necessarily based upon a determination that the tire was defectively manufactured; and that these directly contrary determinations based on the same evidence as to two defendants whose bases of liability are the same are fatally inconsistent. We have reviewed the numerous arguments advanced by plaintiffs attempting to demonstrate that Michelin's position is unsound or that Michelin may not properly raise this issue and have concluded that none of them is meritorious.

Plaintiffs contend that the inconsistent verdict rule applies only to situations in which two verdicts that are inconsistent are returned with respect to the same defendant, for example, where based on the same act

a defendant is held liable to one injured plaintiff and not liable as to another. It is true that that was the situation in a number of the cases relied on by Michelin. (E.g., *Morris* v. *McCauley's Quality Transmission Service, supra,* 60 Cal.App.3d 964; *Campbell* v. *Zokelt, supra,* 272 Cal.App.2d 315; see *Remy* v. *Exley Produce Express, Inc., supra,* 148 Cal.App.2d 550.) However, there is nothing in the cases to indicate that the rule is so limited. On the contrary, in numerous cases, verdicts against one defendant have been held to be inconsistent with verdicts in favor of another defendant with respect to the same plaintiff where liability of both defendants depended upon the same facts. (E.g., *Winkler* v. *So. Cal. etc. Medical Group, supra,* 141 Cal.App.2d at pp. 746-747; *Tolley* v. *Engert, supra,* 71 Cal.App. at pp. 440-441; cf. *Southern Pacific Co.* v. *City of Los Angeles,* 5 Cal.2d 545, 547-548 [55 P.2d 847]; also cf. *Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773, 780 [135 P.2d 569].)

The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence. The rule finds parallel expression in the law relating to court findings: "Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 344, pp. 3145-3146 and cases there cited.) ■ As applied to jury verdicts, the rule is properly stated by Witkin: "Where the asserted liability of each defendant is independent of that of any other, e.g., where they are alleged to be joint tortfeasors, they may be sued together or individually, and individual judgments may be had against any of them. [Citation.] Hence, though sued together, a verdict against one and in favor of another may be entirely proper. [Citations.] [¶] *If, however, the liability of the defendants to the plaintiff is based upon the same facts,* a verdict against one and in favor of another may be inconsistent." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 274, p. 3081; italics added.)

Plaintiffs next contend the jury did not in fact return a verdict in favor of Radial and that, therefore, there are no inconsistent verdicts. This contention is based on the form of the verdicts returned by the jury.

The jury was furnished five different verdict forms together with a form for a number of special findings. Jury verdict No. 1 was a form providing for the exoneration of all three defendants with respect to all causes of action. The names of all three defendants were pretyped on the form. Verdict form No. 1 was not used by the jury. Verdict forms numbered 2

through 5 provided for recovery by one or both plaintiffs with respect to the several causes of action against only that defendant or those defendants "as checked below" or "as marked below," and they appropriately listed either all three defendants or defendants Michelin and Radial with a space provided next to the name of each defendant permitting the jury to make an appropriate mark. Verdict forms 2 through 5 were all used by the jury. In each instance a check mark was placed next to the name of Michelin and no mark was made by the name of Radial, nor was any mark made by the name of Chrysler. Thus, plaintiffs urge that the jury's verdicts were simply silent with respect to Radial and that there are no inconsistent verdicts, simply failures to find.

■ Plaintiffs are quite correct that a verdict against one of two defendants which is silent as to the other defendant is not a verdict in favor of the latter but merely a failure on the part of the jury to find upon all the issues. (E.g., *Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 279 [231 P.2d 816], and cases there cited; *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E.,* 18 Cal.2d 557, 570 [116 P.2d 611].) However, plaintiffs' assertion that the verdicts of the jury were "silent" as to defendant Radial is not correct. As stated by the court in *Irelan-Yuba:* "This rule [that a silent verdict constitutes merely a failure to find] is subject to the qualification that a verdict may be construed with reference to the instructions pursuant to which it was rendered." (18 Cal.2d at p. 570; accord: *Brokaw* v. *Black-Foxe Military Institute, supra,* 37 Cal.2d at pp. 279-280; *Crain* v. *Sumida,* 59 Cal.App. 590, 593-594 [211 P. 479].) Further, the pleadings and evidence may also be examined to determine whether the verdict was meant to exonerate the unnamed defendant. (*Brokaw* v. *Black-Foxe Military Institute, supra,* 37 Cal.2d at pp. 279-280.) And if it appears that the jury meant to exonerate the defendant in question, the verdict form is properly interpreted as a verdict in favor of that defendant. (*Fennessey* v. *Pacific Gas & Elec. Co.,* 10 Cal.2d 538, 541-543 [76 P.2d 104]; *Brand* v. *Norris,* 121 Cal.App.2d 367, 368-369 [263 P.2d 456]; *Crain* v. *Sumida, supra,* 59 Cal.App. at pp. 592-594.)

■ In the case at bench it is abundantly clear from the instructions given the jury, the verdict forms themselves and the special findings of the jury that the jury determined that defendant Radial was not liable and intended to exonerate it. In the first place, the verdict forms are not truly silent as to Radial. In each of the verdict forms upon which Michelin was held liable the typed name of defendant Radial appears, and inasmuch as the forms themselves stated "against only the following defendants as checked below," and "against the defendants as marked

below," the jury's failure to place a check mark or any other mark next to the name of Radial strongly indicates that the jury found Radial not liable. In addition, in the special findings the jury assessed fault 27 percent to Virginia Cavallaro and 73 percent to "defendants," a total of 100 percent. "[D]efendants," which was pretyped on the form, could only have referred to Michelin. The court's instruction to the jury was to assess the fault attributable to "the defendants whose fault . . . proximately contributed to plaintiff's [*sic*] injury." Since the jury did not assess any liability to Radial, it is clear it determined that no "fault" of Radial contributed to the injury. Thus, the jury assessed the fault entirely to Virginia Cavallaro and Michelin. This confirms that the jury intended by its verdicts to exonerate Radial. It indicated its determination that Radial was not liable in the only way it could on the verdict forms with which it was furnished by not placing a check mark opposite the name of defendant Radial. No verdict forms were furnished to the jury that provided for judgment in favor of any fewer defendants than all of them.[1]

Next, plaintiffs contend that inasmuch as "Michelin's liability as a wholesaler was completely independent of any liability of Radial as a retailer," Michelin lacks standing to assert any error in the verdict exonerating Radial, if any error there was. Plaintiffs rely upon two cases, *Diamond Springs Lime Co.* v. *American River Constructors,* 16 Cal.App.3d 581 [94 Cal.Rptr. 200], and *Cook* v. *Superior Court,* 274 Cal.App.2d 675 [79 Cal.Rptr. 285]. Although factually neither case is in point, both express the rule upon which plaintiffs rely. The rule is most accurately stated in the *Diamond Springs* decision: "[A] defendant having independent liability has no standing to appeal from a judgment exonerating his codefendant. . . ." (16 Cal.App.3d at p. 608.) The defect in plaintiffs' contention, however, is that Michelin has not attempted to appeal from the judgment exonerating Radial nor does it complain of that judgment. In fact, it asserts that that judgment was correct because it was based upon a determination that the tire was not defectively manufactured. Its complaint is that the verdict against it necessarily implies a factual determination wholly inconsistent with the verdict exonerating Radial since the bases for liability were the same as to both defendants and the facts with respect to the claimed defect were the same with respect to both defendants.

---

[1]Plaintiffs argue that the jury could have accomplished that result by using verdict form No. 1 and striking out the name of Michelin. That would appear to be true, but there is no indication anywhere in the record that the jury was so informed.

Plaintiffs next contend that Michelin is estopped from asserting the inconsistency in the verdicts because it induced the error. Plaintiffs assert that it was indicated to the jury by both the court and counsel for Radial that each defendant's case was to be decided separately and that Michelin made no objection at the time this information was imparted to the jury. Before voir dire of the jury by counsel commenced, the jury was told by the court that its ultimate verdict could be for or against any party. Michelin did not object. On voir dire of the jury counsel for Radial asked: "Is there anyone who believes that if someone bought a tire from my client and if for any reason that tire failed and the result was someone's death, that a jury should decide that my client is responsible just on that basis alone, that he sold the tire?" Finally, the jury was instructed in the language of BAJI No. 15.02: "Although there is more than one defendant in this suit, it does not follow from that fact alone that if one is liable [both] [all] are liable. Each defendant is entitled to a fair and separate consideration of his own defense and is not to be prejudiced by your decision as to the other[s] . . . . [¶] You will decide each defendant's case separately." Michelin did not object to this instruction. In fact, while it does not appear on the copy of the instruction in the clerk's transcript which party requested this instruction, other documents in the clerk's transcript indicate that both plaintiffs and at least defendants Chrysler and Michelin requested that BAJI No. 15.02 be given.

With respect to the voir dire statement of counsel for Radial, there was no cause for Michelin to object. At the time the statement was made plaintiffs had not yet abandoned their theory of negligence against Radial and Michelin, and the question may have been directed to liability on that theory. In any event, even with respect to plaintiffs' theory of strict tort liability, the statement was not incorrect. It suggested only that liability should not be found if all that appeared was that the tire failed and that the tire was purchased from Radial. There could be no strict liability in tort in the absence of proof that the tire failed because it was defectively manufactured.

Plaintiffs rely on the extended rule of invited error: "[I]f instructions are given by the court at the request of the opposing party, or on its own motion, the complaining party cannot attack them if he himself proposed *similar instructions*." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 243, p. 3057.) But Michelin is not attacking the instruction; it does not contend the instruction was erroneous. On the contrary, Michelin asserts that both the instruction and the pre-voir dire statement of the court told the jury

nothing more than that each party was entitled to separate consideration, which, of course, is true. In addition, as between Chrysler on the one hand and defendants Michelin and Radial on the other, the instruction was wholly appropriate. Michelin's complaint is that the jury made different determinations of fact on either the issue of defect or proximate cause with respect to it and Radial although the basis of liability of each was the same and the evidence with respect to defect and proximate cause was the same with respect to both. As Michelin correctly points out, the jury was nowhere instructed that it could reach inconsistent factual determinations based on the same evidence with respect to defendants Michelin and Radial. On the contrary, all of the instructions concerning the liability of Michelin and Radial named both those defendants in the conjunctive and made it abundantly clear that the bases upon which those defendants could be found liable were the same and that essential to all of them was a determination that the tire was defective.

Michelin is not estopped from asserting the inconsistency in the verdicts.

Next, plaintiffs contend that Michelin waived any objection to the form of the verdict by failing to lodge a timely objection to it or call the defect to the court's attention. They point out that Code of Civil Procedure section 619 provides that when the verdict is announced, "if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court or the jury may be again sent out." Further, they cite authority to the effect that if a party fails to attempt to have a defect in the verdict remedied pursuant to section 619, the defect will be deemed waived. (E.g., *Brown* v. *Regan,* 10 Cal.2d 519, 523-524 [75 P.2d 1063]; *Silverhart* v. *Mount Zion Hospital,* 20 Cal.App.3d 1022, 1029 [98 Cal.Rptr. 187, 54 A.L.R.3d 250].)

However, Michelin does not complain of any formal defect or insufficiency in the verdict. Its complaint is that the verdicts imposing liability upon it and exonerating Radial are inconsistent. No objection pursuant to Code of Civil Procedure section 619 was required to preserve the issue for appeal. (*Campbell* v. *Zokelt, supra,* 272 Cal.App.2d at p. 320; *Remy* v. *Exley Produce Express, Inc., supra,* 148 Cal.App.2d at pp. 554-555.) Moreover, the court was apprised of the problem. Counsel for plaintiffs stated to the court: "I think it [a verdict against Radial] should be directed since if they found Michelin guilty, Michelin responsible, and liable, they should be required to find Radial Tire Corporation responsible. Because I can see Mr. Ball [attorney for Michelin] arguing in this

court this is an inconsistent verdict and the whole thing should be overturned. [¶] And I don't know anything else to do at this point other than request the Court to direct the jury since they have found Michelin responsible." Although, of course, Michelin did not join in the motion that a verdict be directed against Radial, counsel for Michelin stated to the court: ". . . I think it's inconsistent because under the instructions of the Court if there is a products liability based upon a manufacturing defect, the retailer, of course, is in the same position as the manufacturer, so it is an inconsistency, I'll say that."

Finally, plaintiffs argue that the jury may have found Michelin liable on theories inapplicable to Radial (i.e., warranty) or exonerated Radial on some issue as to which the evidence was not the same as to Michelin and Radial and that, therefore, there was no inconsistency in the verdicts. The defect in this argument is that both in legal theory and upon the instructions given, the jury could only find a breach of warranty if they found the tire failed due to a manufacturing defect.[2] The instructions advised the jury that there could be no finding in favor of plaintiffs *on any theory* unless there was a defect in the tire which proximately caused the accident. Thus, regardless of which theory the jury utilized in finding Michelin liable, it necessarily found (1) there was a manufacturing defect in the tire that (2) proximately caused the accident. The establishment of those two facts would result in Radial's liability as a matter of law. (See *Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d at pp. 250-254.) Thus, in the circumstances of this case, the fact that there were several theories upon which liability could have been predicated or several issues upon which Radial could have been exonerated does not afford a basis for avoiding the conclusion that the verdicts were inconsistent.

### Admissibility of Evidence of Remarriage

■ Outside the presence of the jury Michelin offered to prove that Frank Cavallaro had remarried in January of 1972. Plaintiffs objected to the introduction of any evidence of remarriage, and the trial court sustained the objection. Michelin contends that in so doing the court erred.

Michelin concedes that an unbroken line of decisions by Courts of Appeal throughout the state have held that evidence of remarriage by the

---

[2]With respect to breach of warranty, the jury was instructed: "The only issue which you may consider under the plaintiffs' claims based on express warranty or implied warranty is whether there was or was not a manufacturing defect in the tire at the time it was sold to Frank Cavallaro by Radial Tire Company."

surviving spouse is not admissible in a wrongful death case. (E.g., *Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d at p. 241; *Cherrigan* v. *City etc. of San Francisco,* 262 Cal.App.2d 643, 650 [69 Cal.Rptr. 42]; *Benwell* v. *Dean,* 249 Cal.App.2d 345, 355-356 [57 Cal.Rptr. 394]; *Wood* v. *Alves Service Transportation, Inc.,* 191 Cal.App.2d 723, 727-729 [13 Cal.Rptr. 114]; *Gallo* v. *Southern Pac. Co.,* 43 Cal.App.2d 339, 346-347 [110 P.2d 1062]; cf. *Coe* v. *State Farm Mut. Auto. Ins. Co.,* 66 Cal.App.3d 981, 996-997 [136 Cal.Rptr. 331]; *Riley* v. *California Erectors, Inc.,* 36 Cal.App.3d 29, 32-33 [111 Cal.Rptr. 459, 69 A.L.R.3d 1033].)[3] Michelin contends, however, that none of these cases considered the effect of section 351 of the Evidence Code enacted in 1965 and effective January 1, 1967. (Stats. 1965, ch. 299, pp. 1298, 1301.) Section 351 provides: "Except as otherwise provided by statute, all relevant evidence is admissible." The Law Revision Commission comment to section 351 states: "Section 351 abolishes all limitations on the admissibility of relevant evidence except those that are based on a statute, including a constitutional provision."

Plaintiffs' contention that "the trial court was not apprised of the direction of [Michelin's] inquiry" and that, therefore, it is foreclosed from advancing this contention on appeal is not meritorious. Plaintiffs rely on *People* v. *Wiley,* 57 Cal.App.3d 149, 162 [129 Cal.Rptr. 13] (disapproved on other grounds in *People* v. *Wheeler,* 22 Cal.3d 258, 287 [148 Cal.Rptr. 890, 583 P.2d 748]), and *People* v. *Coleman,* 8 Cal.App.3d 722, 727-729 [87 Cal.Rptr. 554], and Evidence Code section 354, subdivision (a). While the cited cases both indicate that where a question is asked the answer to which would appear to be immaterial on its face but counsel has some theory of relevancy or materiality not readily apparent, he must, in the words of the statute, make known to the court "[t]he substance, purpose, and relevance of the . . . evidence." (Evid. Code, § 354, subd. (a).) However, the statute indicates that the required information may be imparted to the court "by the questions asked." Here an economist called by plaintiffs had, on the basis of Virginia Cavallaro's life expectancy, estimated the present value of her earnings at $249,700 and the present value of her domestic services at $250,700. There could be no doubt that the purpose of the proffered evidence of remarriage was to rebut Frank Cavallaro's claim for these economic losses. Moreover, technically it would have been futile for Michelin to argue the point to the court. The

---

[3] In *Rayner* v. *Ramirez,* 159 Cal.App.2d 372, 383-384 [324 P.2d 83], a judgment was affirmed in which the trial court received evidence that the surviving spouse had not remarried. In its decision the appellate court stated that the admitted evidence had "some bearing" on the elements of damage in issue. However, in *Rayner* much of the evidence was admitted without objection and, further, was admissible for purposes of impeachment. (See *Cherrigan* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at p. 651, fn. 7.)

superior court was bound to follow the many Court of Appeal decisions previously cited holding evidence of remarriage inadmissible. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 454-455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Next plaintiffs contend that evidence of remarriage is irrelevant to the amount of damages suffered by a spouse as a result of the wrongful death of the other spouse. There is authority suggesting that as one basis for the exclusionary rule. (See *Wood* v. *Alves Service Transportation, Inc., supra,* 191 Cal.App.2d at p. 728 [quoting from *Hightower* v. *Dr. Pepper Bottling Co. of Shreveport* (La. 1959) 117 So.2d 642, 651]; Annot., Death Action—Evidence of Remarriage, 88 A.L.R.3d 926, 928, § 2.) However, we do not believe that is the true basis for the exclusionary rule, and we cannot agree that evidence of remarriage would not logically have tended to prove that Frank Cavallaro did not suffer the full economic losses claimed for the life expectancy of Virginia Cavallaro in the case at bench.

The reasons for the rule are largely related to public policy and the administration of justice. The principal basis for the rule is the same as that underlying other aspects of the collateral source rule—a tortfeasor should not be permitted to reduce the amount he is required to pay in damages because of benefits received by the injured person from a collateral source. (*Dubil* v. *Labate* (1968) 52 N.J. 255 [245 A.2d 177, 179-180]; see *Benwell* v. *Dean, supra,* 249 Cal.App.2d at p. 356; *Riley* v. *California Erectors, Inc.,* 36 Cal.App.3d at pp. 32-33 [111 Cal.Rptr. 459, 69 A.L.R.3d 1033]; cf. *McLaughlin* v. *United Railroads,* 169 Cal. 494, 498 [147 P. 149].) Other reasons for the rule are that the mitigating effect of remarriage upon a spouse's loss from the death of his or her spouse is speculative and might necessitate trial of innumerable differences and similarities between the deceased spouse and the new spouse. (See *Cherrigan* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at pp. 651-652; *Benwell* v. *Dean, supra,* 249 Cal.App.2d at pp. 355-356; *Wood* v. *Alves Service Transportation, Inc., supra,* 191 Cal.App.2d at pp. 728-729.)

A further explanation for the rule, though not really a reason for it, is that the California Supreme Court long ago deliberately established the rule that the damages resulting from a wrongful death are to be measured at the time of death and that the amount thereof is not affected by subsequent events. (*McLaughlin* v. *United Railroads, supra,* 169 Cal. at p. 498; see *Cherrigan* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at p. 652; *Benwell* v. *Dean, supra,* 249 Cal.App.2d at pp. 355-356.)

Nevertheless we cannot agree with Michelin that Evidence Code section 351 was intended to abrogate the rule uniformly followed in this state excluding evidence of remarriage of the surviving spouse offered in mitigation of damages in a wrongful death action. In *Kaplan* v. *Superior Court,* 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1], the California Supreme Court rejected a similar argument that the enactment of Evidence Code section 351 abrogated the "vicarious exclusionary rule" followed in California in criminal cases. In a thorough discussion of the legislative history of the Evidence Code and section 351 in particular, the court noted that when it was intended the code should alter existing law, the commissioners' comments invariably indicated that fact and revealed a " 'careful weighing of the need for the evidence against the policy to be served by its exclusion.' " (6 Cal.3d at p. 158; italics deleted.) The court then stated: "In sharp contrast, neither the commission's background study nor its comment to any section of the Evidence Code discloses an intent to alter or abolish the [vicarious exclusionary] rule. Indeed, the commission nowhere even mentions, let alone 'carefully weighs,' that rule. In view of the commission's painstaking analysis of many evidentiary rules that are of far less importance and notoriety than [the vicarious exclusionary rule], its deafening silence on this point cannot be deemed the product of oversight. It can only mean the commission did not intend—and the code therefore does not accomplish—a change in the . . . rule." (6 Cal.3d at p. 159, fn. omitted.)

For the same reasons, we must conclude that the codification of the general rule of admissibility of relevant evidence in Evidence Code section 351 was not intended to abrogate the longstanding, uniformly applied rule excluding evidence of the surviving spouse's remarriage in an action for wrongful death of his or her spouse. As explained, this exclusionary rule is based on reasons related to sound public policy. In addition, it is the rule followed in every sister state jurisdiction in the nation save Wisconsin. (See *Cherrigan* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d at pp. 650-651, fn. 6; Annot., *supra,* 88 A.L.R.3d 926; Annot., Death Action—Remarriage—Effect, 87 A.L.R.2d 252.) In addition, the adoption of a rule to the contrary would be theoretically inconsistent with the decision of the California Supreme Court in *McLaughlin* v. *United Railroads, supra,* 169 Cal. at p. 498.

*Independent Claim Not Subject to Reduction on*
*Account of Contributory Negligence*

It is fruitless for this court to consider on its merits plaintiffs' contention that their claim for damages for the wrongful death of Virginia Cavallaro

is based upon an independent right of action (Code Civ. Proc., § 377) and that Virginia Cavallaro's contributory negligence should not be attributed to them to reduce the amount of damages recoverable by them (see *Willis v. Gordon,* 20 Cal.3d 629, 636-638 [143 Cal.Rptr. 723, 574 P.2d 794], conc. opn. of Mosk, J.; Comment, *Contributory Negligence—A Defense to Actions for Wrongful Death in California?,* 29 So. Cal. L.Rev. 344.) The controlling authorities are to the contrary. (*Buckley* v. *Chadwick,* 45 Cal.2d 183, 190-201 [288 P.2d 12, 289 P.2d 242]; *Lemos* v. *Eichel,* 83 Cal.App.3d 110, 114, fn. 1* [147 Cal.Rptr. 603]; see *Willis* v. *Gordon, supra,* 20 Cal.3d at pp. 632-633.)   ■   Both this court and the trial court are bound to follow rules of law established by the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.)

### *Disposition*

The jury's verdicts were fatally inconsistent. Michelin's motion for new trial should have been granted. The judgment is reversed.

Tamura, Acting P. J., and Mc Daniel, J., concurred.

A petition for a rehearing was denied September 7, 1979, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied November 8, 1979. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*As modified on denial of rehearing.