[Civ. No. 8340.   Third Dist.   Apr. 13, 1954.]

BERT SILLS, Appellant, v. LELAND J. SOTO et al., Respondents.

Busick & Busick for Appellant.

Desmond, McLaughlin & Russell and Gerald M. Desmond for Respondents.

PAULSEN, J. pro tem.*—A jury awarded appellant damages in the amount of $2,500 for personal injuries sustained in an automobile accident. The trial court denied appellant's motion for a new trial and he has appealed from the judgment entered upon the jury's verdict.

The major portion of appellant's opening brief is devoted to a discussion of the alleged error of the trial court in instructing the jury in respect to negligence and contributory negligence since the respondents admitted liability and the case was tried on the sole issue as to the amount of damages sustained by appellant. However, as pointed out by respondents, this assignment of error must be disregarded as the record on appeal, as augmented by a supplemental reporter's transcript which the trial judge has certified contains all the instructions actually given by him at the trial, establishes that the said complained of instructions were not given and that the case was submitted to the jury on the sole issue as to damages. Surprisingly, appellant in his reply brief offers no explanation of his misleading opening brief. However, in fairness to counsel, it should be observed that they did not participate in the trial, but were later substituted as attorneys of record, and from the clerk's transcript it would appear that the judge endorsed as ''Given'' certain instructions in regard to liability, but which in fact were not given according to his aforementioned certification to this court.

Since the main point raised by appellant has become moot, we have but to consider his contentions that the evidence establishes that the damages are inadequate as a matter of law and that the trial court committed prejudicial error by instructing the jury that appellant could not recover in excess of $658.20 for medical expenses incurred or paid.

The accident out of which this cause of action arose occurred at the intersection of Broadway and Fifth Avenue in the city of Sacramento at 5 p. m. on a weekday when the traffic was heavy. At that time and place respondent Fleming drove a truck owned by the respondent Soto into the rear of an automobile being operated by appellant. For three or four minutes immediately prior thereto appellant's vehicle had been stopped behind three others, the first of which was awaiting an opportunity to make a left turn.

The appellant testified that he heard a thundering crash

*Assigned by Chairman of Judicial Council.

and then was thrown forward with such force and violence that he jackknifed under the steering wheel and lost consciousness for several minutes and that when he came to he was in a violent chill and had terrific pains in his head, neck, back, stomach and over his left ribs. Nevertheless, appellant was able to move his automobile from the middle of the intersection where it had stopped after the impact, and to engage in a short conversation with respondent Fleming. He now maintains that he was in a daze and a stupor when he did so, and that thereafter he again lapsed into unconsciousness. However, within a short time appellant recovered sufficiently to drive to a friend's house and telephone his sister to come and drive him home. This she did after first taking him to the emergency hospital as recommended by the police officer whom she called. After examination at the emergency hospital, the appellant was discharged without treatment and he was unable to contact his physician until the following day.

The next morning appellant went to work at his regular job which entailed heavy labor, but became ill and returned home and up to the time of trial, approximately 15½ months later, he had not been employed. He testified that his condition still was such that the least exertion or strain made him dizzy and nauseated and caused severe pains and headaches. His sister corroborated his testimony that he was unable to so much as cut the lawn or use a shovel to dig in the yard. Although ambulatory, he does nothing but read or water flowers and does not go fishing or engage in other activities as he formerly did. There was no evidence that prior to the accident appellant had been lazy, physically defective, or a malingerer. His employer for the 20½ months immediately preceding the accident testified that appellant seemed nervous, but that he was of a happy nature, well liked by all, a better than average worker, and that he would rehire him if he were ready to go back to work.

The day after the accident appellant's family doctor examined appellant but gave him no treatment, and he was not called as a witness at the trial. Being dissatisfied with the attitude of said physician and his failure to prescribe, appellant consulted Doctor Mearns three days after the accident and went to him three or four times during the following two months. Doctor Mearns, who is an orthopedic surgeon, testified at the trial pursuant to a subpoena issued on behalf of respondents and was the only witness prodced by them. Doctor

Mearns testified that a thorough examination, including X-rays, disclosed no bone injuries, but some osteoarthritis in appellant's neck and lower spine, which he claimed could not have been caused by the accident, but which he admitted quite possibly could have been aggravated by it. He also found that appellant had a mild strain of the muscles which extend over the shoulder blades from the neck to the shoulders, sprains of the muscles of the middle and lower back, and a probable contusion under the left arm. Doctor Mearns recommended heat and rest and was of the opinion at that time that appellant's muscular pains would probably disappear within the course of two months. However, when Doctor Mearns saw appellant about eight weeks later he was impressed with his nervousness and noted that appellant then complained of shortness of breath at night and inability to sleep. Although Doctor Mearns felt that some of appellant's complaints might be attributable to nervousness, he was thoroughly convinced that appellant was sincere and honest and was actually suffering from the pains he described. Doctor Mearns admitted he could speak only as an orthopedist and not as a psychiatrist and that although he determined appellant was not physically disabled, he was in no position to state whether or not he was psychotically disabled.

Appellant testified that about a month after the accident he developed shortness of breath and such severe chest pains that he consulted Doctor Johnson, a heart specialist, who diagnosed his ailment as a myocardiac condition caused by the accident. However, Doctor Johnson was not called as a witness, and Doctor Schroeder who subsequently took two electrocardiographs testified that they revealed no abnormality or disease of appellant's heart. However, he found that the left side of his chest was larger than his right and felt that nerve injuries incurred in the accident had caused an increased sensitivity of appellant's anterior chest wall which could produce painful sensations. Doctor Van Den Berg, a neurologist, discounted appellant's contention that an accident could produce myocarditis, but he admitted that he had not examined appellant's heart and did not know what its condition might be. Doctor Van Den Berg, on the basis of a neurological examination he made of appellant about eight months after the accident, testified that from the history of the case he concluded that appellant had suffered a concussion of the brain, a twisting of his spine, sprain of both shoulders, and some injury to the left arm. He could not determine whether or

not the small hernia in the right groin, which appellant then had, antedated the accident, but he testified that the accident could have precipitated the hernia but that there would have to have been a congenital weakness or susceptibility to hernia in order for it to do so. Doctor Van Den Berg agreed with Doctor Mearns that appellant's arthritis of the neck and spine was not caused by the accident. In fact, 10 years before he had treated appellant for mild arthritis. Doctor Van Der Berg found no evidence of a spinal cord injury, but he was of the opinion that the accident had caused nerve injury which was manifested by appellant's various pains, diminished sensation, altered reflexes, and feeling of numbness. He found no organic cause for appellant's frequent headaches, vomiting, and stomach distress and felt these disturbances were due to nerves. However, Doctor Van Den Berg was confident that appellant suffered from these subjective symptoms and did not imagine his pains. He stated that appellant had a definite neurosis and that any accident or strain, such as anxiety over pending litigation, would tend to increase appellant's neurotic condition. He emphasized that people of the neurotic type, like appellant, were just as sick and suffered as much from pains and disturbances caused by nerves as if they had an organic disease. The doctor stated he could not estimate when appellant might be relieved or cured, but he did not think appellant would ever again be able to do hard work.

Doctor Schroeder, a specialist in internal medicine, to whom appellant went for examination and treatment about six months after the accident, in substance concurred in Doctor Van Den Berg's findings and prognosis. In addition, he stated that appellant's spine had a list or curve to the right. On this doctor's advice appellant had a brace fitted in an effort to improve his posture and ease muscular strain in his back. Doctor Schroeder agreed with Doctor Van Den Berg that appellant had suffered nerve injuries in the accident, but he went further and stated that he had no doubt that most of appellant's complaints were due to such injury. He added that appellant's left superficial abdominal reflexes were absent. Doctor Schroeder felt the accident caused appellant to undergo a personality change and that he was totally disabled except for capacity to live an almost "vegetative" existence. Doctor Schroeder concluded appellant was a "disabled man and very severely disabled. He has not impressed me as a malingerer at all."

It is unnecessary to further detail the medical testimony as the foregoing résumé thereof demonstrates the unanimity of opinion of the experts that appellant was not feigning his symptoms and that the accident had caused appellant severe physical pain and much mental suffering. ■ However. the jury was not bound by this testimony and was free to exercise its independent judgment in determining the nature, extent and duration of appellant's injuries and the amount of disability resulting therefrom. (*Ortzman* v. *Van Der Waal,* 114 Cal.App.2d 167, 170 [249 P.2d 846, 252 P.2d 7].) Nevertheless, it is obvious that the jury did not reject the medical testimony *in toto* but gave it due consideration. By awarding the appellant $2,500, the jury recognized that he had suffered more than nominal damage. ■ Although a judgment for a larger amount might not have been reversed as excessive, it does not follow that $2,500 is inadequate as a matter of law. No one but the victim knows the severity of the physical discomfort or the extent of the mental distress he experiences. The jury and the trial judge were just as capable of assigning a monetary value to the suffering undergone by appellant as this court which has not had the opportunity to observe him and to judge of his credibility. There is no mathematical yardstick by which damages for pain and suffering can be measured. One individual might not be willing to endure appellant's pain and suffering for one day or for one hour for even a million dollars whereas a more stoic and mercenary person might consider $500 adequate compensation for such physical and mental discomfort and distress. ■ For this cogent reason it has become well established that:

"In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy . . . Normally, the appellate court has no power to interfere except when the facts before it suggest passion, prejudice or corruption upon the part of the jury, or where the uncontradicted evidence demonstrates that the award is insufficient as a matter of law." (*Gersick* v. *Shilling,* 97 Cal.App.2d 641, 645 [218 P.2d 583].)

■ The facts of this case do not bring it within the exceptions to the general rule. The jury was entitled to discredit appellant's claim that he had lost wages of $70 a week for 15 months and would continue to do so by reason of the injuries he sustained in the accident. The jury could find that

the appellant was not wholly incapacitated and that he was and had been able to° pursue some gainful occupation, and that he could and should mitigate such damages by securing employment suitable to any physical limitations he might have. The jury could determine that appellant's suffering was not of the intensity and duration that he described. If we assume, as contended by appellant, that the jury did not award the appellant more thn $658.20 for his medical expenses, the jury must have assessed $1,841.80 as general damages to compensate appellant for his past and any future pain and suffering. This amount cannot be held inadequate as a matter of law. In a case such as this where there can be no fixed standard for determining the amount of damages, the triers of fact must of necessity be given broad discretion in deciding what sum is fair and just. The gravity of alleged injuries presents a question of fact which is within the province of the jury to determine. In evaluating the nature and effect of appellant's injuries, the jury could consider that they had not necessitated hospitalization nor the keeping of appellant under opiates. In fact, he was never bedridden. The appellant was able to attend the trial and the jury could from his physical appearance, facial expressions, and general demeanor draw its own conclusions as to how much pain he was then experiencing. Another factor which the jury could take into account was that only three doctors testified, although appellant was examined or treated by four or five others after the accident. The jury could also consider that the medical opinions expressed were based largely on complaints made by appellant and not on objective symptoms. The jury may have concluded that appellant exaggerated his ailments. (*Harris* v. *Los Angeles Transit Lines,* 111 Cal.App. 2d 593, 599 [245 P.2d 35].) Since it cannot be said that from all the facts and the inferences which could be drawn therefrom there could not be a reasonable difference of opinion as to whether or not appellant's general damages exceeded $1,841.80, it cannot be held as a matter of law that the $2,500 awarded him by the jury was inadequate. For the same reason, it cannot be said that the trial judge abused his discretion in refusing to grant a new trial on the ground that the damages were inadequate.

The last ground which appellant urges as a basis for reversal of the judgment is alleged error in the trial court's instructing the jury that appellant could recover no more than

$658.20 for medical expenses although he testified that he had spent between $1,000 and $1,100 for medical care since the accident. There was no proof that this was a reasonable amount nor that it did not include the cost of penicillin injections for an infection which may or may not have been caused by the accident. Moreover, the appellant did not seek to amend his complaint in which he prayed for special damages for incurred medical expenses in the amount of $658.20. Therefore, he was limited to that amount and the jury was properly so charged.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.