[Civ. No. 6520. Fourth Dist. May 2, 1961.]

ANNA WOOD, Appellant, v. ALVES SERVICE TRANS-PORTATION, INC. (a Corporation) et al., Respondents.

Davenport, Mayo & Lawrence, William R. Lawrence and Milan Moacanin for Appellant.

Baker, Palmer, Wall & Raymond and Robert L. Raymond for Respondents.

GRIFFIN, P. J.—Plaintiff-appellant is the surviving wife of Lloyd Wood, who was killed on August 9, 1958, when a tank-truck and tank-trailer, being operated by him and then parked on the east side of Highway 99 near the intersection of State Highway 33, off of the traveled portion of the highway, was struck by a tractor and two trailer vans then owned by defendant-respondent Alves Service Transportation, Inc., and operated by defendant-respondent Bruce Carl Mosegaard. At the time of said collision, plaintiff's husband was standing in the vicinity of the parked vehicle then and there being operated by him, and as a result of the aforesaid collision his vehicle was propelled into his person, resulting in serious injuries to him which caused his death. Plaintiff sought judgment for $225,000 general damages for loss of her husband and his society, comfort and services and her right to receive support from him, plus special damages. The jury returned a verdict in favor of the plaintiff for $20,256 general damages. She sought a new trial, which was denied. In her brief, she indicates that she is appealing from the part of the judgment which failed to award to her a greater amount of damages than that rendered by the jury. Her points on appeal are limited to that question.

Plaintiff testified she married Lloyd Wood on July 2, 1951, in Germany; that she was age 32 at the time of his death; that after coming to the United States she was employed in a garment factory and was employed up until her husband's death; that her husband was employed as a truck driver and his income for six months in 1956 was $3,945.94, in 1957 it was $6,825.76 and in 1958 it was $4,958.87.

Based on this income, plaintiff's expert witness testified that Mr. Woods' life expectancy was 40.06 years and that his gross income for life, based on the salary table indicated, would have been about $176,298. On cross-examination, it was shown that this figure did not take into consideration his cost of living during that period. From the seven-year period of their married life, they accumulated a house trailer, a 1955 model automobile and a small savings account. No children were born as the issue of the marriage.

The principal contention of appellant is that counsel for respondents was guilty of prejudicial misconduct in relation to his opening statement to the jury in reference to plaintiff's likelihood of being remarried in a short time and that fact should be considered by the jury. She cites *Gallo* v. *Southern Pac. Co.,* 43 Cal.App.2d 339 [110 P.2d 1062], holding that in an action for wrongful death, the court did not err in sustaining an objection to the question asked on cross-examination of the widow of decedent as to whether she had any plan of contemplating marriage in the near future.

Defendants relied upon *Rayner* v. *Ramirez,* 159 Cal.App.2d 372, 383 [324 P.2d 83]. The plaintiff there had testified, without objection, to the fact that she had not remarried. No objection was made to the question until the introduction of a marriage certificate proving that she had so remarried, and the minister who performed the marriage ceremony so testified, without objection. This court held that such question could not be raised for the first time on appeal and that a wide latitude was allowed on cross-examination to determine the facts and the truth of the testimony given on direct examination, and that no prejudicial error resulted. That case is factually distinguishable from the instant case.

With this background, prior to trial, the respective parties asked the court to adjourn into chambers to discuss the question of whether certain evidence that plaintiff had plans for marriage at an early date would be admissible for the purpose of defending against an action where liability was quite apparent and the real defense would be the amount of damages to be awarded. The trial judge examined the authorities and asked for time for further consideration of this point and reserved a ruling on the point. Immediately thereafter, in his opening statement to the jury, counsel for defendant said:

"The evidence will show too, I think, a very strong probability that Mrs. Wood will remarry."

"Mr. Lawrence: Your Honor, I wish to raise an objection at this point, the law is clear on this question of activities following the date of loss. I refer to the memorandum that I supplied the court and I feel——

"The Court: The jury has been advised before that anything that counsel says to them is not evidence, and it may or may not be that we will admit evidence of that sort, but I don't want the jury to believe that simply because one of the

. . . .

attorneys says there will be evidence that necessarily it will be admitted. . . .

"MR. LAWRENCE: On the same point, Your Honor, this is speculation on the part of Mr. Raymond. He expects there is a reasonable reason on belief. He isn't talking about evidence that he's going to bring in.

"MR. RAYMOND: I am talking about evidence that I will bring in, Your Honor, and will present.

"THE COURT: I think I've made my ruling on it.

"MR. RAYMOND: Thank you, Your Honor. The evidence will not generalize in that regard. I think we'll be able to show you by name, occupation and place the man of probable remarriage as far as Mrs. Wood is concerned, and her evidence if fairly presented here will I think confirm the probability of that remarriage."

Counsel for plaintiff made no motion to strike this statement or to further admonish the jury to disregard it. (See *People* v. *Hampton,* 47 Cal.2d 239 [302 P.2d 300]; *Jonte* v. *Key System,* 89 Cal.App.2d 654, 659 [201 P.2d 562].)

Thereafter, in chambers, the court and respective counsel again considered the question and the court ruled that defendants could not offer evidence on the issue. A question of instructing the jury further to disregard the statement about remarriage came up and it was fairly agreed that this subject might be further emphasized by a specific instruction, and, accordingly, the standard instruction concerning opening statements would fairly cover the subject. The court there remarked, with some apparent agreement of all of the parties, that, as a practical matter, evidence or no evidence, the jury would probably consider the possibility of remarriage. Counsel for appellant replied, "I agree with that, Your Honor." To us this does not appear to be an unreasonable concession.

Thereupon, in the absence of the jury, counsel for defendants made an offer of proof to the effect that he had present in court a man who had observed substantial displays of affection between plaintiff and a named man, beginning in July or September of 1959, and by testimony and motion pictures he would show conduct on their part which the jury could only construe as conduct of persons who contemplate marriage. (These acts included shopping together on Saturday afternoons.) We conclude that the trial court's ruling was proper in refusing this proffered evidence, even though it might have been established as true.

In 30 American Law Reports 121, 123, under the subject of "Remarriage of surviving spouse," it is said, citing many out-of-state cases: "By the great weight of authority, in actions to recover damages for the wrongful death of a married person, evidence is inadmissible that the surviving spouse has remarried since the death complained of, and this fact is not to be considered in mitigation of the damages recoverable in behalf of such surviving spouse."

In a number of cases, this general rule is modified to some extent, as in *Preble* v. *Wabash Railway Co.*, 243 Ill. 340 [90 N.E. 716], where the widow brought an action for compensation for the pecuniary injuries resulting from the death of a husband, alleging her pregnancy at that time. The court held it proper to show, upon the trial, that the child was born and had died. See also *Davis* v. *Wight* (Tex. Civ. App.), 218 S.W. 26, where a minor daughter was recovering for death of the father. Subsequent marriage of the daughter was held proper as bearing on damage, at least up to the time of her marriage. See also *Lopez* v. *New Amsterdam Casualty Co.*, 261 F.2d 659; and *Sipes* v. *Michigan Cent. R. Co.*, 231 Mich. 404 [204 N.W. 84, 85], where the court stated: "The widow was 21 years of age at the time of the trial and defendant requested the court to instruct the jury to consider in fixing the period of loss of support, the possibility of remarriage . . . The possibility of so young a person contracting another marriage should have been permitted to temper the thought of celibacy for 39 years."

From an examination of the authorities, the general rule appears to be that the pecuniary loss to the beneficiary is to be based upon conditions as they existed at the time of the death. (30 A.L.R. 121, *supra*.) In *Stephens* v. *Natchitoches Parish School Board*, 110 So.2d 156, 166, in support of this rule, the court held that: ". . . the engagement of the plaintiff widow to be remarried was irrelevant," and declared that "even if such an engagement should actually result in remarriage, it did not follow that the condition of the plaintiff would be bettered" and the court had "no hesitancy in holding that the engagement of a spouse, or the actual remarriage, is completely irrelevant to a consideration of the damages to which such spouse is entitled." (*Hightower* v. *Dr. Pepper Bottling Co. of Shreveport*, 117 So.2d 642, 651.)

See also *City of Rome*, 48 F.2d 333, 343, where it is said: "If we should enter upon an inquiry as to the relative merits of the new husband as a provider, coupled with his age, em-

ployment, condition of health, and other incidental elements concerning him, unavoidably we should embark upon a realm of speculation and be led into a sea of impossible calculations."

Certain cases are there cited supporting a refusal to mitigate damages of a widow because of remarriage. (See also *Cervantes* v. *Maco Gas Co.*, 177 Cal.App.2d 246, 252 [2 Cal.Rptr. 75]; 16 Am.Jur. § 234, p. 156.)

The only question remaining to be considered here is whether the opening statement made to the jury as to defendants' intention to prove that plaintiff contemplated remarriage, which affirmatively appears to have been made in good faith, constituted prejudicial error justifying a reversal of the case on the question of inadequate damages.

It is to be remembered that the trial judge, who admittedly heard the remarks and considered the good faith of the parties and fully considered the evidence of the damages suffered, refused to grant a new trial on this question. The familiar rule stated in *Jensen* v. *Southern Pacific Co.*, 129 Cal.App.2d 67, 80 [276 P.2d 703], applies, where it is said:

"This same contention was presented to and overruled by the trial court upon defendant's motion for a new trial. That is a determination that the challenged statement was made in good faith and did not prejudice the defendant, a determination not to be disturbed unless plainly wrong." (Citing cases.)

And in *Barlin* v. *Barlin*, 156 Cal.App.2d 143, 147 [319 P.2d 87], where it is said: "The court was in a better position than we are to evaluate the effect of the challenged remarks of respondent's counsel and we are not disposed to disagree with the determination of the trial court thereon." See also *Hundley* v. *St. Francis Hospital*, 161 Cal.App.2d 800 [327 P.2d 131].

On the motion for new trial, the trial court refused to receive in evidence or consider affidavits obtained from two jurors to the effect that the opening remarks of counsel, as to possibility of remarriage, were considered by a number of jurors in their deliberations. The trial court refused consideration of these affidavits under the well-recognized rule that affidavits of jurors may not be used to impeach a verdict. Certain traditional exceptions are to be noted in *Kollert* v. *Cundiff*, 50 Cal.2d 768, 773 [329 P.2d 897]:

"An exception to the general rule is made by statute where 'any one or more of the jurors have been induced to assent to any general or special verdict . . . by a resort to the determination of chance. . . .' (Code Civ. Proc., § 657, subd. 2.)

Another exception, recognized by judicial decision, is that affidavits of jurors may be used to set aside a verdict where the bias or disqualification of a juror was concealed by false answers on *voir dire.*"

We conclude, as was said in that case, at page 774, that: "The present case does not come within either of them, and, whether or not additional exceptions may be justified under some circumstances, we are of the view that the allegations of the affidavit before us, even if taken as true, do not warrant a departure from the general rule." See also *Crespo* v. *Cook,* 168 Cal.App.2d 360, 362 [336 P.2d 31]; *Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674 [292 P.2d 257]; *People* v. *Reid,* 195 Cal.249, 261 [232 P. 457, 36 A.L.R. 1435]; *Snoffer* v. *City of Los Angeles,* 6 Cal.App.2d 14, 16 [43 P.2d 852]; *Gonsalves* v. *Petaluma Bldg. Materials Co.,* 181 Cal.App. 2d 320 [5 Cal.Rptr. 332].

## INSTRUCTIONS ON NEGLIGENCE

Next, plaintiff argues that, due to certain instructions given or refused on the question of negligence, it was possible that a compromise verdict was returned by the jury on the question of damages. It is argued that the giving of defendant's requested instruction on the presumption of due care of defendant's driver was erroneous because another witness, first called by plaintiff, as her witness, and later called as defendant's witness, testified to certain facts in relation to the accident and, accordingly, the presumption was dispelled under the holding in *Stout* v. *Southern Pacific R.R. Co.,* 127 Cal.App.2d 491, 496 [274 P.2d 194].

It is apparent from the evidence that this witness did not observe all of the actions of the defendant driver. His testimony was not "wholly irreconcilable with the presumption." (*Williams* v. *Pacific Gas & Elec. Co.,* 181 Cal.App.2d 691, 703 [5 Cal.Rptr. 585].) Counsel stipulated that the defendant driver had no memory of the facts of the accident. No error resulted. (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432]; *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809].)

At defendants' request, the court instructed the jury on the doctrine of imminent peril. Plaintiff claims there was no evidence to support a defense based on the theory of sudden emergency. (Citing *Staggs* v. *Atchison, Topeka & S.F. Ry. Co.,* 135 Cal.App.2d 492, 502 [287 P.2d 817].) Under the facts produced, the instruction was proper. (*Emery* v. *Los Angeles Ry. Corp.,* 61 Cal.App.2d 455 [143 P.2d 112].)

The refusal of plaintiff's proffered instruction on the doctrine of res ipsa loquitur was authorized under the evidence produced. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344].) Suffice to say, we have examined other instructions referred to and find no reversible error. The verdict of the jury was in favor of the plaintiff on the question of liability, and there is no reasonable process by which it can be adduced that plaintiff suffered detriment as a result of the alleged erroneous instructions on the question of negligence.

### INSTRUCTIONS ON MEASURE OF DAMAGES

The court gave an instruction at the request of plaintiff in the language of BAJI Number 175-B (revised):

"In determining that pecuniary loss, you may consider the financial support, if any, which plaintiff would have received from the deceased except for his death, and the value of the society, comfort, care, protection and right to receive support, if any, plaintiff has lost by reason of the death. In weighing these matters, you shall consider the age of the deceased and of plaintiff; the state of health of deceased and of plaintiff as it existed at the time of the death and immediately prior thereto; their respective life expectancies as shown by the evidence; . . . whether he showed an inclination to contribute to the support of the plaintiff; the earning capacity of the deceased and of plaintiff; and any other facts shown by the evidence relating to the value of the support, society, care, comfort and protection which the plaintiff reasonably might have expected to receive from the deceased had he lived."

A further instruction offered by both plaintiff and defendants was given, to the effect that: "The right of one person to receive support from another is not destroyed by the fact that the former does not need the support, nor by the fact that the latter has not provided it, and even if one or both of those conditions have existed, the mere right to receive support may have a pecuniary value, and thus may be the basis of assessing damages against a party, if any, who negligently has caused the death of the person from whom the support was due."

This was followed by an instruction to the effect that: "While the amount of the verdict is left to your sound discretion, your award must be just and reasonable, and must be based upon the evidence introduced."

The court, at the request of defendant, then instructed the

jury in the language of BAJI Number 171-B.1 (modified) that: "If you should find that plaintiff is entitled to recover damages, then whether or not you may award her any sum for possible future detriment will depend on whether or not you find from the evidence that such detriment is reasonably certain to be suffered as a proximate result of the death in question. If they are, then such a plaintiff should be compensated for them. If they are not, then no award should be made for them."

This was followed by an instruction stating: "You shall not consider as evidence any statement of counsel made during the trial, unless such statement was made as an admission or stipulation conceding the existence of a fact or facts. . . . You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the court; such matter is to be treated as though you never had known of it."

 The court refused, as covered, an additional instruction offered by plaintiff, to the effect that: ". . . the wife is entitled to the support of her husband regardless of her own financial circumstances."

Plaintiff claims error in the refusal of the court to give this additional instruction and cites *Gilmore* v. *Los Angeles Ry. Corp.*, 211 Cal. 192, 197 [295 P. 41] ; *Johnson* v. *Western Air Exp. Corp.*, 45 Cal.App.2d 614 [114 P.2d 688] ; *Cervantes* v. *Maco Gas Co., supra*, 177 Cal.App.2d 246, 252. The record indicates that the jury returned to court on one occasion and announced that it was only interested in further instructions on the question of damages. The instructions on this subject were reread, including that portion reciting:

"In determining that pecuniary loss, you may consider the financial support, if any, which plaintiff would have received from the deceased except for his death, and the value of the society, comfort, care, protection and right to receive support, if any, plaintiff has lost by reason of the death. In weighing these matters, you shall consider the age of the deceased and of plaintiff . . . and any other facts shown by the evidence relating to the value of the support . . . which the plaintiff reasonably might have expected to receive from the deceased had he lived."

From an examination of the instructions given, we perceive no error in the court's refusing, as covered, the proffered instruction. The general rule is applicable that the trial court need not give more than one instruction on a given

question of law, and even if requested instructions which were refused would correctly state the law, it is not error if the substance of such instructions has been given to the jury in other language. (*Nelson* v. *Colbeck,* 94 Cal.App.2d 792, 797 [211 P.2d 878]; *Luis* v. *Cavin,* 88 Cal.App.2d 107, 115 [198 P.2d 563]; *Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655 [283 P.2d 91]; *McNulty* v. *Southern Pacific Co.,* 96 Cal.App.2d 841, 854 [216 P.2d 534]; *Pappas* v. *Bogard,* 167 Cal.App.2d 599, 603 [334 P.2d 947]; *Sloan* v. *Stearns,* 137 Cal.App.2d 289, 300 [290 P.2d 382].)

We conclude that the claim of compromise verdict is not apparent; that the trial judge was justified in rejecting that claim and stating, in ruling on the motion for a new trial, that "The question of liability in this case was clear cut," and holding that the damages awarded were not inadequate as claimed.

■ We are bound by the familiar rule, as stated in *Kraut* v. *Cornell,* 175 Cal.App.2d 528, 531, that the question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and, secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. ■ Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has neither seen nor heard the witnesses, and has no power to pass upon their credibility. (See *Harris* v. *Los Angeles Transit Lines,* 111 Cal.App.2d 593, 597 [245 P.2d 35]; *Sills* v. *Soto,* 124 Cal.App.2d 539, 544 [269 P.2d 98]; *Adams* v. *Pacific Motor Trucking Co.,* 172 Cal.App.2d 505, 507 [342 P.2d 351]; *Gersick* v. *Shilling,* 97 Cal.App.2d 641, 645 [218 P.2d 583].)

Judgment affirmed.

Coughlin, J., concurred.

A petition for a rehearing was denied May 29, 1961, and appellant's petition for a hearing by the Supreme Court was denied June 28, 1961.