Filed 6/17/13  Pacific Western Bank v. Prospect Village CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PACIFIC WESTERN BANK, | |
| Plaintiff and Respondent, | G045790, G046274, G046276, G046646, G046652, G046995, G047079 |
| v. | |
| PROSPECT VILLAGE L.P. et al., | (Super. Ct. No. 30-2010-00376213) |
| Defendants and Appellants. | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed.

Enterprise Counsel Group, Patrick D. Flannery and James S. Azadian for Defendants and Appellants.

Hodel Brigss Winter, Matthew A. Hodel and Ashley Merlo for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and Respondent Pacific Western Bank (PWB or the bank) made a commercial loan to Prospect Village L.P. (Prospect Village) to build a commercial project. John Tillotson, Jr.,[1] and Daniel Howse signed the promissory note on behalf of Prospect Village's general partner, Pelican Tustin LLC, and signed commercial guaranties, individually and as trustees of the Tillotson Family Trust and the Howse Family Trust, respectively. John's wife, Haydee, also signed a commercial guaranty as a trustee of the Tillotson Family Trust. The commercial venture failed to cover the unpaid amount of the loan. PWB sued Prospect Village on the promissory note and sued Howse and the Tillotsons on their guaranties. According to PWB's evidence, the outstanding amount due on the loan (with interest) was over $1.7 million.

The jury found in favor of PWB in the amount of $1,491,064.57 and against Prospect Village on the promissory note, against Howse and John on their personal guaranties, and against the Tillotson Family Trust and the Howse Family Trust. (See *Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473 (*Portico*) [a trust cannot be a judgment debtor, i.e., "'the person against whom a judgment is rendered'" per Code of Civil Procedure section 680.250].) The court subsequently amended the judgment to delete the Tillotson Family Trust as a judgment debtor and placed in its stead John and Haydee in their representative capacities as trustees of the family trust.

Prospect Village, John, and Haydee appeal[2] and contend the evidence does not support the jury's verdict, reasoning that the jury must have compromised, given the

---

[1] Because John Tillotson, Jr., and his wife, Haydee Tillotson, are both appellants and share their last name, we refer to each by their given names for ease of reading. No disrespect is intended.

[2] While the matter was still pending in the superior court, Howse petitioned for protection in the bankruptcy court and proceedings in this matter were stayed as to Howse and his family's trust. Consequently, Howse and the Howse Family Trust are not before us on these appeals.

2

fact the jury awarded less damages than PWB claimed; the court erred in failing to instruct the jury pursuant to Civil Code section 2819; the court erred in amending the judgment to make John and Haydee judgment debtors in their representative capacities as trustees of the Tillotson Family Trust; and the trial court erred in awarding PWB additional attorney fees for time and effort in amending the judgment to make John and Haydee judgment debtors in their representative capacities as trustees of the Tillotson Family Trust. According to John and Haydee, the reason the jury found against the Tillotson Family Trust—which cannot be judgment debtor (*Portico*, *supra*, 202 Cal.App.4th at p. 473)—is because PWB's attorneys drafted the jury verdict form.

I

FACTS AND PROCEDURAL BACKGROUND

The jury below found in favor of PWB. We summarize the facts with a view to the evidence in support of the judgment. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)

On March 1, 2007, PWB agreed to make an $11,200,000 construction loan to Prospect Village, a single entity business. Under the terms of the promissory note, Prospect Village agreed to pay off the principal and any unpaid accrued interest in one payment on September 1, 2008. Because a single entity business owns no other assets, PWB required the loan to be guaranteed by others.

Howse and John, the two members of Pelican Tustin, LLC, signed the promissory note as members of Pelican Tustin LLC, the general partner of Prospect Village. At the same time, John signed commercial guaranties as an individual and as trustee of the Tillotson Family Trust. Howse signed commercial guaranties as an individual and as trustee for the Howse Family Trust. Haydee also signed a commercial guaranty as trustee of the Tillotson Family Trust. John and Howse understood the guaranties were required to guard against possible changes in the economy and against fluctuations in the real estate market.

3

The loan was to fund the construction of 12 live/work units and one commercial building in Tustin. Howse and John spent seven years on the Prospect Village project, starting in 2003. They formed a limited partnerhip to build Prospect Village and purchased the land from the City of Tustin before taking out the loan with PWB.

Once the loan funded, the bank disbursed funds based on requests for draws by the borrower, Prospect Village. The requests had to be made in writing and were reviewed by bank personnel. Over the course of time, PWB disbursed $10.6 million of the loan funds.

PWB did not allow or agree to any oral changes to the loan documents. Any request for a modification of the terms of the loan had to be made in writing and approved by the executive vice-president manager of the real estate industries group of PWB, the credit administrator, the chief officer, and the senior credit officer.

Prospect Village completed the project with disbursements from the loan. Construction on the live/work units was completed in 2008, and the units were offered for sale in May 2008. The commercial building was not offered for sale until about January 2009. Prospect Village had trouble selling the properties and requested PWB to extend the due date on the loan from December 2008 to March 2009. PWB knew of the difficulty Prospect Village was having and granted the extension. PWB granted other extensions as well, the last one to May 5, 2010.

Escrow on the first live/work unit did not close until the end of March 2009, nine months after it was placed on the market. The commercial building closed escrow in January 2010. Although it had originally been hoped the project would make Howse and John approximately a $3.5 million profit, in February 2009, it appeared likely the sales would be insufficient to pay off the loan. In February 2010, after all 13 properties—the collateral on the loan—had been sold, approximately $1.2 million plus interest remained due on the loan.

4

In May 2009, Howse and John signed a forbearance and modification document acknowledging Prospect Village and the guarantors were in default on the loan and the guaranties, respectively. Howse and John signed the forbearance and modification on behalf of the borrower, Prospect Village, as individual guarantors, and as trustees of their respective family trusts. Haydee also signed the forbearance and modification as trustee of the Tillotson Family Trust. A modification to the forbearance and modification agreement was subsequently signed by Howse, John, and Haydee.

Howse said he wrote to the bank four or five times, asking to be relieved of his guaranty. Shortly after the close of escrow on the last building, Howse received a letter from PWB stating there was a deficiency on the loan and the loan was set to mature on May 5, 2010. The maturity date came and went without Prospect Village or the guarantors paying off the deficiency. At that time, the outstanding loan balance, including interest, was $1,635,660.43. By the time of trial, PWB asked the jury to award it $1,774,603.84 as against each defendant.

PWB sued Prospect Village for failure to repay the loan, Howse and John on their personal guaranties and as trustees on their respective family trusts, and Haydee on her guaranty as trustee for the Tillotson Family Trust. PWB did not name either family trust as a defendant. The matter was tried to a jury. During argument to the jury, defense counsel made the following statement: "If you find against Prospect Village any amount to fulfill their full obligation, then Prospect Village has to pay [PWB]. *If Prospect Village is obligated to pay [PWB], then these guarantors aren't obligated to pay it back.*" (Italics added.) PWB's counsel immediately objected that defense counsel's statement was an incorrect statement of the law. The court called a recess for the lunch hour and directed defense counsel to return to court with any authority he had supporting his statement to the jury. Defense counsel said he "will try."

When the parties returned to court after the lunch recess, defense counsel cited Civil Code section 2819 and argued modification of the loan agreement exonerated

5

the guarantors. PWB responded that the statute did not support defense counsel's statement to the jury. The court denied defense counsel's request to instruct the jury in the terms of Civil Code section 2819, because the jury had already been instructed, there had been no motion to amend the answer to the complaint to allege the loan had been modified without the guarantors' consent, and the guarantors signed a forbearance and modification, as well as a modification of the forbearance and modification admitting their obligation. The court also instructed the jury to disregard defense counsel's statement quoted above.

The court granted PWB's motion for a directed verdict as to the following defenses: Equitable estoppel, waiver, accord and satisfaction, novation, unclean hands, fraud, PWB caused its own damages, failure to mitigate, and setoff. On June 17, 2011, the jury returned a nine-to-three verdict in favor of PWB and against Prospect Village, Howse, the Howse Family Trust, John, and the Tillotson Family Trust in the amount of $1,491,064.57. The court entered its judgment on July 22, 2011, along with a provision finding PWB was entitled to costs and attorney fees.

Prospect Village, John, Haydee, and Howse filed their motions for a new trial and judgment notwithstanding the verdict on August 1, 2011. A week after that, the court denied without prejudice PWB's motion to amend the judgment. PWB contended the judgment should be modified to correct a clerical error, arguing the judgment should be amended because it "could be construed to be inconsistent with the pleadings and proof in this case insofar [as] it might suggest the judgment is entered against the Tillotson Family Trust, rather than the defendant trustees in their representative capacities." The defense took the position that the judgment was correct and "[t]he jury verdict makes no doubt John and Haydee's liability is in their representative capacity . . . ."

On November 1, 2011, the trial court partially granted PWB's motion for attorney fees, awarding PWB $467,643 in attorney fees. On December 6, 2011, the

6

superior court amended the judgment. The amended judgment reflected postjudgment interest, the award of $467,643 in attorney fees, and an award of more than $18,000 in costs and disbursements to PWB. Ten days later, on December 16, 2011, the court denied appellants' motions for reconsideration of its motions for a new trial and judgment notwithstanding the verdict.

On March 1, 2012, the trial court granted PWB's ex parte application for entry of a second amended judgment. This version deleted the language of the jury's verdict wherein the jury found in favor of PWB and against the Tillotson Family Trust and the Howse Family Trust. The second amended judgment stated, in pertinent part: "IT IS ORDERED, ADJUDGED, AND DECREED that plaintiff [PWB] shall recover from defendants Prospect Village L.P., John . . . individually and as Trustee for the Tillotson Family Trust, and Haydee . . . as Trustee for the Tillotson Family Trust, these additional sums: . . . ."

The court subsequently awarded PWB more than $19,000 in additional attorney fees based on the work performed on the ex parte motion and PWB's motion for additional fees. Appellants filed a total of seven appeals from the judgment, the first amended judgment, the second amended judgment, the third amended judgment, and orders the superior court made after judgment. We ordered the appeals consolidated.

II

DISCUSSION

A. *Compromise Verdict and Sufficiency of the Evidence*

PWB took the position at trial that there remained an unpaid balance of $1,774,603.84 on the loan. Although the jury found in PWB's favor, it awarded PWB $1,491,064.57 as against Prospect Village, Howse and John on their personal guaranties, and against the Howse Family Trust and Tillotson Family Trust. It should be noted that the party "aggrieved" by the less than desired amount awarded by the jury was PWB, not appellants.

7

Appellants argue that based on the evidence and the defense presented in this matter, the jury either had to find in favor of PWB in the amount of $1,774,603.84, or find in favor of the defense and against PWB. Appellants maintain the jury's decision "to award PWB its claimed damages less interest accruing after a certain date" demonstrates the jury compromised, requiring reversal. They also argue the same evidence demonstrates the jury's verdict is not supported by the evidence.

1. *Compromise Verdict*

"[T]he question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and, secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy." (*Wood v. Alves Service Transportation, Inc.* (1961) 191 Cal.App.2d 723, 733.) We begin with the presumption the jury acted properly. (*People v. Cruz* (2001) 93 Cal.App.4th 69, 73.)

An improper compromise verdict occurs when jurors cannot agree on the issue of liability, but those who believe the defendant is liable consent to returning an award providing inadequate damages in exchange for the votes of jurors who believe the defendant is not liable. (*Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 607.) An indication that the verdict is the result of an improper compromise occurs when the jury provides for *grossly inadequate* unliquidated general damages. (*Id.* at p. 606.) For example, a verdict awarding the plaintiff $200 for the loss of an eye "was a conclusive indication that the jury had compromised the issues of liability and damages." (*Ibid*.) A new trial on all issues is required when a verdict is reached through compromise. (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 371.)

In support of their motion for a new trial, appellants submitted the declaration of one of their attorneys concerning a conversation he had with the foreperson of the jury. According to that declaration, (1) the foreperson did not believe the defendants were liable and (2) other jurors were divided on the amount of damages to be awarded PWB. Some of the jurors believed the defendants were liable for the full $1.7

8

million-plus amount sought by PWB and others felt PWB should recover less because it had not "dealt properly" with appellants, although those same jurors recognized that under the promissory note and the guaranties, Prospect Village and the guarantors were liable to PWB. These jurors felt appellants were liable for the unpaid principal, but not all the interest sought by PWB. The jury then reached a middle ground, concluding the amount of damages should be limited to the amount owed at the time the last unit was sold and that PWB should not receive interest on the amount thereafter.

The attorney's declaration was inadmissible hearsay. (*Burns v. 20th Century Ins. Co.* (1992) 9 Cal.App.4th 1666, 1670-1672; *People v. Williams* (1988) 45 Cal.3d 1268, 1318 ["'a jury verdict may not be impeached by hearsay affidavits'"].)

Even were the attorney's declaration admissible, the showing was inadequate. According to the declaration, the dispute among the jurors who voted in favor of finding liability was not about *whether* appellants should be found liable. The dispute was over the amount of damages to be awarded. The foreperson, one of the three jurors to vote in favor of the defense, did not claim any juror changed his or her vote on the issue of liability because other jurors agreed to award PWB less damages.

Moreover, as the amount of damages awarded was not grossly inadequate, the award of approximately $1.4 million instead of the approximately $1.7 million claimed by PWB, fails to indicate—conclusively or otherwise—that the verdict was the result of an improper compromise. (*Bradford v. Edmands* (1963) 215 Cal.App.2d 159, 167 [$22,300 awarded in general damages was substantial and no indication the award was the result of a compromise].) Thus, appellants failed to offer any evidence in their original motion for a new trial to support their contention that the jury compromised on the issue of liability.

When appellants filed their motion for reconsideration months after the court denied their motion for a new trial, appellants offered the affidavit of another juror. That affidavit merely stated the juror accurately set forth in an e-mail to one of

9

appellants' attorneys his recollection about how the jury reached agreement on the amount of damages. A copy of the e-mail exchange was attached to the juror's declaration. According to the juror, the jury believed PWB was entitled to a judgment in its favor, but the jury decided to not award the bank any interest after the due date on the last extension granted by the bank.

The trial court denied the motion for reconsideration because it was untimely and did not contain new facts. (Code Civ. Proc, § 1008.) Appellants do not contest the trial court's decision denying the motion.[3] We therefore do not consider the affidavit. Were we to consider it, the result would be the same. The affidavit did not demonstrate a compromise on the issue of liability; only that the jurors who returned the verdict in favor of PWB did so because the law and facts required it, but they reduced the damages based on the banks performance in this matter.

Accordingly, we conclude the jury's verdict was not the result of an improper compromise. That "the damages of $1,491,064.57 were inadequate compared to PWB's ostensibly proven all-or-nothing damages of over $1.7 million" may mean PWB did not get the verdict it desired, but that fact does not mean appellants are entitled to a new trial.

2. *Insufficient Evidence*

Appellants also allege substantial evidence does not support the "inadequate" amount awarded by the jury, while conceding the evidence would support an award for the more than $1.7 million sought by PWB. Because the evidence would support an award in excess of $1.7 million, it necessarily supports the verdict in this matter—i.e., the evidence is not *insufficient* to support a lesser amount of damages. As

---

[3] "An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).)

10

the jury did not reach an improper compromise, it was PWB's ox that was gored by the jury's "inadequate" award, not appellants'. (See *Baroni v. Musick* (1934) 3 Cal.App.2d 419, 421-422 ["we fail to see how defendant has been injured because plaintiff has accepted a verdict for something less than he could have had"].) Reversal requires the objecting party to have been prejudiced. (Cal. Const., art. I, § 13.) But when the amount awarded the plaintiff is less than the evidence would otherwise support and the award is *not* the result of an improper compromise on the issue of liability, the defendant is not entitled to relief since he or she has not been prejudiced by the award. We therefore reject appellants' contention that the evidence does not support the judgment.

B.  *Jury Instruction Issue*

After the jury was instructed and PWB argued its case to the jury, appellants' counsel told the jury that if it found "Prospect Village is obligated to pay [PWB], then these guarantors aren't obligated to pay it back." As a consequence of PWB's objection to that statement, the trial judge directed appellants' counsel to bring to court authority for the objected to proposition. Counsel did not return with any,[4] but instead cited Civil Code section 2819 and requested the jury be instructed in the terms of

---

[4] It is no surprise counsel failed to provide authority supporting his argument to the jury. The commercial guaranties signed in this matter contained the following language: "This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness."

the statute.[5]

The court denied the request, noting the jury had already been instructed without the defense proposing such an instruction, a fact defense counsel conceded. PWB's attorney argued that permitting the defense to introduce "a brand-new legal argument" after the jury had been instructed, and after he had already argued his case, would be extremely prejudicial to PWB. The court also observed that the guarantors signed a forbearance and modification agreement and a modification of the forbearance agreement. Appellants contend the trial court's refusal to instruct on Civil Code section 2819 denied them a fair trial, because the promissory was modified without their consent. We disagree.

As the language of section 607a of the Code of Civil Procedure makes evident, a request for an instruction made during closing argument is untimely (*Wilson v. Gilbert* (1972) 25 Cal.App.3d 607, 613 [instruction requested after first witness had been sworn was untimely]), but the court has discretion to give additional instructions at that point. Absent an abuse of discretion in denying a belated request for a particular instruction, the trial court's decision must be upheld. (*Ibid.*) Appellants have not demonstrated an abuse of discretion.

Contrary to appellants' argument, the court did not reject the proposition that the jury could find Prospect Village liable on the promissory note while finding appellants were not liable on the guaranties. Ignoring the timeliness issue, the court at most correctly held defense counsel misstated the law in arguing the guarantors were not liable on their guarantees *if* Prospect Village was liable on the promissory note. After all,

_____

[5] "A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended. However, nothing in this section shall be construed to supersede subdivision (b) of Section 2822." (Civ. Code, § 2819.)

12

the guaranty was of the borrower's performance of all obligations under the promissory note and related documents. The borrower's default triggers the guarantors' obligation.

Additionally, the evidence did not support the instruction. Appellants argue the modification of the price release schedule was the modification that would, pursuant to Civil Code section 2819, exonerate the guarantors from their guaranties. However, the guaranties waived any such defense. Under the guaranties, the guarantors waived all rights and defenses arising by reason of "any modification or change in terms of the indebtedness, whatsoever . . . ." Accordingly, we conclude the trial court did not err in refusing to instruct the jury in the terms of Civil Code section 2819.[6]

C. *Amendment of the Judgment to Remove the Reference to the Family Trusts as Judgment Debtors*

"On Plaintiff [PWB's] claim for breach of guaranty against Defendant Tillotson Family Trust," the jury found in favor of PWB and "against Defendant Tillotson Family Trust." The Tillotson Family Trust was not a party to this lawsuit. PWB sued John and Haydee in their representative capacities as trustees of the trust.

A trust cannot be a judgment debtor because it is not a person. (*Portico*, *supra*, 202 Cal.App.4th at p. 473.) "'A claim based on a contract entered into by a trustee in the trustee's representative capacity, . . . may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity . . . .' (Prob. Code, § 18004.)" (*Ibid*.) Thus, for a judgment to be enforceable against trust property, judgment should be "entered against those who held title to such property—the trustees." (*Id*. at p. 474.)

---

[6] In a footnote contained in that part of appellants' opening brief dealing with this issue, appellants contend the court committed reversible error by failing to use the special verdict form they submitted. We do not address issues raised only in a footnote. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160.)

13

Less than a month after the original judgment, PWB brought a motion to amend the judgment to provide: "The above judgment is corrected only to clarify the following: All references to the Tillotson Family Trust shall mean and refer to John . . . and Haydee . . . as trustees for the Tillotson Family Trust. Accordingly, as the judgment pertains to the Tillotson Family Trust, judgment is entered against each John . . . and Haydee . . . as trustees for the Tillotson Family Trust in the amount of $1,491,064.57."

John and Haydee opposed the proposed amendment, arguing it was "an attempt to try to create an ambiguity that would allow [PWB] to attempt to proceed against [Haydee's] personal assets." A judgment entered against a trustee in her representative capacity as trustee does *not* suggest personal liability on the trustee's part. (Prob. Code, § 18000 ["[u]nless otherwise provided in the contract or in this chapter, a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administration of the trust . . . ."]) John and Haydee argued the original judgment was *proper* and did not need correction: "[W]e think it makes sense that in the normal course of events if [PWB] seek[s] to levy or writs of execution, that people are going to understand that you can go after a trustee in its representative capacity." They argued PWB could satisfy the judgment by "going to . . . accounts that are held by the trustee in its representative capacity, because . . . a trustee has to hold legal title to the trust assets . . . ." They further argued, "*The jury verdict makes no doubt John and Haydee's liability is in their representative capacity and extends to trust assets only, not to their personal estates.*" (Italics added.) The trial court apparently agreed with the Tillotsons' argument and denied PWB's request, although it did so without prejudice to PWB renewing the motion.

Eventually the court amended the judgment at PWB's request and over appellants' objection. The second amended judgment stated the judgment in favor of PWB was "against defendants Prospect Village L.P., John . . . individually and as Trustee

14

for the Tillotson Family Trust, Haydee . . . as Trustee for the Tillotson Family Trust, and Daniel S. Howse, individually and as Trustee for the Howse Family Trust . . . ."

In *Portico,* the trustees of the Harrison Children's Family Trust agreed to sell Portico a building held by the trustees in trust. (*Portico*, *supra*, 202 Cal.App.4th at p. 466.) When the sale fell through, Portico sued the Harrisons as trustees for the trust. (*Id.* at pp. 466-467.) The matter went to arbitration and the arbiter entered an award in favor of Portico and against *the trust*. The superior court subsequently confirmed the arbitration award. (*Id.* at p. 467.) "Portico did not seek to correct or modify either the arbitration award or the judgment to indicate the arbitration award and judgment were properly against the trustees; nor did Portico appeal from the judgment against the trust. Instead, years of protracted litigation ensued. Portico sought to enforce the judgment by levying on funds generated by the apartment building [held in trust] and to add as judgment debtors the successor trustees of the [trust] . . . ." (*Ibid*.) The court held Portico waited too long to have the judgment modified, although it had several remedies available when faced with the arbitration award. (*Portico*, *supra*, 202 Cal.App.4th at p. 477.)

Unlike the situation in *Portico*, where the plaintiff waited years after receiving the arbitrator's award against the family trust and did not seek to amend the judgment before attempting to levy on property held by the trustees for the benefit of the Harrison Family Trust (*Portico*, *supra*, 202 Cal.App.4th at p. 467), the original judgment in the present case stated: "It appearing by reason of said verdict that plaintiff [PWB] is entitled to judgment against each and all of the defendants."

When a jury returns an ambiguous verdict, the party adversely affected should request a "'more formal and certain verdict'" (*Hathaway v. Spiro* (1985) 164 Cal.App.3d 359, 366), but if the party does not and the verdict has been accepted and the jury discharged, "the duty devolves upon the trial judge to interpret the verdict from its language, taking into account the pleadings, evidence and instructions." (*Ibid*.) "'[A]n

15

appellate court will interpret the verdict if it is possible to give a correct interpretation,' but will reverse if the verdict is 'hopelessly ambiguous.' [Citation.]" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705.) The jury's verdict in this matter was ambiguous to the extent it found in favor of PWB as against the Tillotson Family Trust instead of against the trustees of the trust.

However, given the complaint, the evidence, and the jury instructions, the only way the jury could possibly return a verdict against the Tillotson Family Trust—other than because they were provided a faulty verdict form—was as a result of jurors concluding PWB proved John and Haydee breached the guarantee they signed as trustees of the family trust. The jury impliedly found in favor of PWB on every fact essential for PWB to prevail on the breach of guaranty claim. (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 673.) The jury also found in favor of PWB and against John and Howse on their individual guaranties. The guaranty signed by John and Haydee as trustees of the Tillotson Family Trust was identical in all important respects to those signed by Howse and John as individuals. Furthermore, the forbearance and modification was signed John and Haydee in their representative capacities. Accordingly, it appears beyond dispute the jury found the John and Haydee breached the guaranty they signed as trustees and that breach was the basis for naming the trust as a judgment debtor in the verdict. The trial court did not, therefore, err when it entered the second amended judgment against John and Haydee as trustees for the Tillotson Family Trust. The second amended judgment does not contravene the verdict.

The amendment did not violate John and Haydee's right to due process. John and Haydee's personal property is not subject to satisfying the judgment in connection with their guaranties as trustees of the Tillotson Family Trust; only the property held in the trust is subject to satisfying the judgment against them as trustees. (Prob. Code, § 18000, subd. (a).)

16

Although *Portico* holds a trust cannot be a judgment debtor (*Portico*, *supra*, 202 Cal.App.4th at pp. 473-474), it does not go so far as to hold a judgment naming a trust as a judgment debtor cannot be amended. Tellingly, if amendment of such a judgment was prohibited, the *Portico* court would not likely have noted "Portico did not seek to correct or modify either the arbitration award or the judgment to indicate the arbitration award and the judgment were properly against the trustees . . . ." (*Id.* at p. 467.) What is more, the *Portico* court remanded the matter to the superior court to consider whether one of the defendants should be added to the judgment as a judgment debtor. (*Id.* at p. 479.)

D. *Award of Attorney Fees*

A contract may contain a provision providing for attorney fees in enforcing the contract. When the contract contains such a provision, the court must fix reasonable attorney fees as an element of the costs of the lawsuit. (Civ. Code, § 1717, subd. (a); Code of Civ. Proc., § 1033.5, subd. (a)(10)(A).) The promissory note and the guaranties each contained an attorney fees clause. The trial court initially awarded PWB $474,548 in attorney fees. It later granted PWB's request for an additional award of $6,925 in attorney fees incurred in responding to the appellants' motion for reconsideration of the motions for new trial and judgment notwithstanding the verdict, and noted there was no dispute on the amount of the additional award. PWB then attempted to have appellants stipulate to a second amended judgment reflecting the additional attorney fees awarded by the court. According to PWB's ex parte motion to amend the judgment, defense counsel objected to the form of the proposed second amended judgment, asserting for the first time that judgment had been entered against the Tillotson Family Trust, not against John and Haydee in their capacities as trustees of the trust. After PWB successfully obtained the second amended judgment, the court awarded PWB further attorney fees in

17

the amount of $19,139.[7]  The latter award, reflected in the third amended judgment, was for attorney fees incurred in successfully litigating the ex parte motion.

Appellants argue the trial court erred in awarding PWB additional attorney fees incurred in correcting the verdict.  Appellants reason that as the jury's verdict in favor of PWB and against the Tillotson Family Trust, which cannot sue or be sued (*Portico*, *supra*, 202 Cal.App.4th at p. 473), must be laid at the feet of PWB's attorneys who submitted the jury verdict form and as a result, the fees incurred by PWB in correcting the problem caused by its attorneys were not reasonable.  In other words, appellants contend it is unreasonable to make one party to a contract pay for the attorney fees incurred by the other party to correct that party's mistake.

An appeal from a "postjudgment award of attorney fees is separately appealable as an order after judgment.  (Code of Civ. Proc., § 904.1, subd. (a)(2); *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 223.)"  (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 869-870, fn. omitted.)  We review the trial court's award of attorney fees for an abuse of discretion.  (*Serrano v. Stefan Merli Plastering Co., Inc*. (2011) 52 Cal.4th 1018, 1025-1026.)

"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]"  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  "'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . .  [Citations.]  The value of legal services performed in a case is a matter in which the trial court has its own expertise.  [Citation.]  The trial court may make its own determination of the value of the services contrary to, or without the

---

[7]  The additional attorney fee award consisted of $16,364 incurred in litigating the ex parte motion to amend the judgment and $2,775 on its motion for additional attorney fees.

necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096. Thus, the trial court has broad authority in determining a reasonable amount of attorney fees (*id.* at p. 1095) and we uphold a trial court's award absent an abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

Appellants' contention has a certain surface appeal. After all, had PWB's attorneys simply submitted a verdict form indicating verdicts against the Tillotsons in their representative capacities as trustees, rather than against the Tillotson Family Trust, there would have been no need to interpret the verdicts. However, had not the Tillotsons defeated PWB's original attempt to correct the patent yet explainable ambiguity in the verdict by arguing there was no need to amend the original judgment because the judgment *was clearly against the Tillotsons in their representative capacities as trustess to the family trust*, and subsequently changed their position, maintaining the original judgment was void to the extent the jury found against the trust itself instead of against its trustees, all the time and expense incurred by PWB in obtaining the second amended judgment would not have been necessary. By originally taking the position the jury's verdict clearly was against the Tillotsons in their representative capacities, and subsequently switching positions, the Tillotsons forced PWB to litigate further, consistent with the trial court's finding in originally awarding $474,548 in attorney fees: "Defendants took an all or nothing approach." The fees incurred in bringing a motion for a second amended judgment are more directly attributable to the Tillotsons' change in position than they are to the original error in drafting the jury verdict form.

We cannot say on this record the trial court abused its discretion in awarding PWB the additional $19,139 in attorney fees.

19

### III

### DISPOSITION

The judgment is affirmed.  PWB shall recover its costs on each appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.